948 A.2d 610

HALINA JABLONOWSKA, INDIVIDUALLY AND AS ADMINISTRA-
TRIX AD PROSEQUENDUM AND ADMINISTRATRIX OF THE
ESTATE OF JADWIGA BACZEWSKA, DECEASED AND TA-
DEUSZ JABLONOWSKA, PLAINTIFFS–APPELLANTS, v.
DAVID P. SUTHER AND THERESA SUTHER, DEFENDANTS–
RESPONDENTS, AND JOHN DOE, JANE ROE, ABC CORP.
AND XYZ CO., SAID NAMES BEING FICTITIOUS, DEFEN-
DANTS.

Argued January 8, 2008—Decided June 10, 2008.

*Samuel Lachs* argued the cause for appellants.

*Thomas W. Matthews* argued the cause for respondents (*Soriano, Henkel, Biehl & Matthews,* attorneys).

*Jeffrey M. Keiser* argued the cause for amicus curiae Association of Trial Lawyers of America–New Jersey (*Starr, Gern, Davison & Rubin* and *Jeffrey M. Keiser,* attorneys; *Mr. Keiser* and *Amos Gern,* of counsel and on the brief).

*Gerald H. Baker* argued the cause for amicus curiae New Jersey State Bar Association (*Lynn Fontaine Newsome,* President, attorney; *Mr. Baker* and *Amirali Y. Haidri,* of counsel; *Mr. Baker, Mr. Haidri* and *Eleanore M. Schenck,* on the brief).

Justice LaVECCHIA delivered the opinion for the Court.

This appeal presents the question whether the verbal threshold provision in the Automobile Insurance Cost Reduction Act of 1998 (AICRA), *N.J.S.A.* 39:6A–1.1 to –35, which acts as a limitation on an insured's ability to sue an errant operator of a motor vehicle, can apply to bar an insured from maintaining a claim for negligent infliction of emotional distress pursuant to the liability theory announced by this Court in *Portee v. Jaffee,* 84 *N.J.* 88, 417 *A.*2d 521 (1980). In *Portee,* we recognized a plaintiff's entitlement to recompense for the severe emotional harm that may be expected from having perceived the death of, or serious injury to, a spouse or intimate family relation. *Id.* at 101, 417 *A.*2d 521.

Plaintiff's complaint alleged a *Portee*-based negligent-infliction-of-emotional-distress claim arising from an automobile accident

caused by defendants that resulted in plaintiff suffering severe emotional distress after witnessing her mother, a passenger in plaintiff's vehicle, sustain fatal injuries at the accident scene. Both the trial court and the Appellate Division concluded that AICRA's verbal threshold applied to plaintiff's *Portee* claim and dismissed that cause of action based on plaintiff's failure to comply with the statute's requirements. *Jablonowska v. Suther*, 390 *N.J.Super.* 395, 398, 915 *A.*2d 617 (App.Div.2007). We granted certification, 192 *N.J.* 69, 926 *A.*2d 854 (2007), and now reverse.

Since its inception, the *Portee* claim always has transcended the need to prove permanent physical injury. Despite that background, the Legislature provided no indication through the verbal threshold's plain language or its legislative history demonstrating an intent suddenly to superimpose the threshold's permanent bodily injury requirement on *Portee* claims involving the happenstance use of a motor vehicle. Absent that clear expression, we hold that the unique, derivative *Portee* claim is independent of AICRA's verbal threshold. Therefore, plaintiff's *Portee* claim should not have been dismissed for non-compliance with AICRA's requirements for suit.

## I.

On October 14, 2000, Halina Jablonowska was driving to Wallington to visit her children and her eleven-month-old granddaughter. Jablonowska's mother, Jadwiga Baczewska, was accompanying her. While proceeding northbound on a stretch of Route 21 in Newark, Jablonowska's Honda Civic was struck from the rear by a vehicle being driven by David Suther.[1] The impact caused Jablonowska's Civic to crash into a concrete balustrade.

---

[1] The vehicle was owned by Theresa Suther and used in connection with her business. At the time of the accident, David was operating the vehicle in his capacity as an employee of Theresa's business. The Complaint filed in this matter named both individuals as defendants, as well as fictitious persons and businesses.

As a result of the crash, Jablonowska temporarily lost consciousness. As she regained awareness, she initially noticed pain in her head, leg, and chest. She then heard her mother moaning and crying out for help. By the time Jablonowska could turn herself toward the passenger seat to be able to see her mother, she saw Baczewska's head slumped forward. Baczewska was not moving. The distraught Jablonowska suspected that her mother had suffered serious injuries. Fearful of worsening her mother's grave condition by attempting to examine her, Jablonowska exited her car to obtain assistance.

Jablonowska "was in shock," and "trembling all over" as she answered questions about the accident posed by a responding officer. She and her mother were transported by ambulance to a nearby hospital. At the hospital, Jablonowska was treated and discharged. Baczewska, on the other hand, was not so fortunate. She had sustained fractures to her back, neck, and ribs. Worse, the force of the collision had partially severed her aorta, causing it to bleed directly into the thoracic cavity. She was pronounced dead on her arrival at the hospital, and a medical examination revealed that she had died within minutes of the accident from exsanguination caused by the transected thoracic aorta.

As a result of having witnessed her mother sustain severe personal injuries that resulted in death, Jablonowska instituted this action for emotional distress.[2] The record that Jablonowska sought to present in support of her emotional distress claim demonstrated that, after her mother's death, Jablonowska experienced "frequent crying, headaches, palpitations, chest pain, shortness of breath, nausea with vomiting, dizziness, [and] tingling and numbness of her extremities." She also suffered from nightmares and flashbacks of the accident. Her appetite decreased, and her memory and concentration became impaired. Three months after the accident, she began psychotherapy. From those treatments, the therapist identified Jablonowska's symptoms as including

---

[2] Jablonowska's Complaint also stated wrongful death and survivorship claims.

[a] variety of phobias, including fear of driving, a fear of being a passenger in a car, a fear of being in a closed room, sleep disturbance, intensive recollections of the motor vehicle accident while awake, flashbacks of the motor vehicle accident and a variety of other symptoms relating to re-experiencing ... the traumatic event. [Jablonowska] was not able to see any pictures of her mother for one year after that car accident. [She] also painfully tried to avoid the accident site. She avoids thoughts and feelings concerning the accident, she can't participate in any family events like Christmas or Easter.... She also lost her interest in socializing. She felt detached from others and unable to have loving feelings. The accident has affected her sexual and personal life, giving [her] a sense of vulnerability and insecurity.

During the treatment, [Jablonowska] was disciplined, cooperative, [and] highly motivated, but also depressed, felt isolated from others, and suicidal. She blamed herself for her mother's death and she felt guilty for being alive.

The psychotherapist diagnosed Jablonowska with chronic Post–Traumatic Stress Disorder ("PTSD") and Major Depressive Disorder. She prescribed psychotropic medication, but opined that Jablonowska's prognosis was "unfavorable" and that "[t]he effect[s] of [the] psychological injuries on [Jablonowska's] life are self-evident and permanent."

Jablonowska consulted a psychiatrist in the fall of 2003 when her symptoms persisted. Dr. David Brozyna also diagnosed Jablonowska with PTSD arising from "the accident of October 14, 2000 and ... witness[ing] her mother die in that accident." He opined that Jablonowska's prognosis was "guarded at best," and that she likely would require "a long course of medication and supportive psychotherapy." Jablonowska continues treatment with Dr. Brozyna and takes daily doses of psychotropic medications to combat her maladies.

As noted, Jablonowska's negligent-infliction-of-emotional-distress claim was fashioned after the cause of action recognized in *Portee v. Jaffee*, 84 *N.J.* 88, 417 *A.2d* 521 (1980). The Complaint alleged that Suther's negligent operation of his motor vehicle caused Jablonowska to experience the psychological trauma of witnessing her mother's injuries and subsequent death at the accident scene, which caused Jablonowska's severe mental impairment. Defendants moved for dismissal of the *Portee* claim when Jablonowska failed to produce a physician's certification within

sixty days of the filing of defendants' answer, as required by AICRA's verbal threshold provision.[3]  *N.J.S.A.* 39:6A–8(a) (1998) (amended 2003).  Jablonowska's response to the motion acknowledged that her own soft-tissue injuries would not satisfy the type of "permanent" injury required to state a claim under AICRA's verbal threshold.  However, she argued that her claim, which was based on a *Portee* theory, was independent of the verbal threshold.[4]  She therefore asserted that *N.J.S.A.* 39:6A–8(a) (1998) (amended 2003), with its physician-certificate and bodily injury threshold requirements, did not apply.

The trial court found that the verbal threshold applied and dismissed the emotional-distress claim based on Jablonowska's failure to satisfy the physician-certification requirement and her failure to produce objective evidence of permanent bodily injury.  *See ibid.*  On April 2, 2004, the court entered an Order memorializing that decision.  Thereafter, the court denied a motion for reconsideration and scheduled trial for March 7, 2005.

In January, 2005, Jablonowska moved a second time for reconsideration of the April 2, 2004, Order or, in the alternative, for adjournment of the trial date.  In support, Jablonowska submitted

---

[3] In her application for automobile insurance, Jablonowska selected the "limitation on lawsuit option" that allows an insured to obtain a lesser premium on the condition that the insured only may state claims to recover for injuries "arising out of the ownership, operation, maintenance or use of such automobile," where the insured satisfies the substantive and procedural requirements set forth in the verbal threshold. *See N.J.S.A.* 39:6A–8(a) (1998) (amended 2003); *see also DiProspero v. Penn,* 183 *N.J.* 477, 480–81, 874 A.2d 1039 (2005) (discussing AICRA's limitation-on-lawsuit option).

[4] To maintain a cause of action under the verbal threshold, a plaintiff must provide evidence that she sustained a

> bodily injury which result[ed] in death; dismemberment, significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment. [*N.J.S.A.* 39:6A–8(a) (1998) (amended 2003).]

a certification from Dr. Brozyna in a belated attempt to demonstrate compliance with the verbal threshold's physician-certification requirement and avoid dismissal. She relied on *Casinelli v. Manglapus*, 181 *N.J.* 354, 858 *A.*2d 1113 (2004), in which we stated that failure to satisfy the physician-certification requirement in *N.J.S.A.* 39:6A–8(a) within the sixty-day statutory window does not necessitate dismissal of a plaintiff's cause of action. *Id.* at 355–56, 858 *A.*2d 1113 ("[T]he late filing ... [is] akin to a discovery violation, with respect to which the court may resort to any of a full panoply of remedies, ranging from an order to compel production through dismissal, depending on the facts."). Nevertheless, the trial court denied the motion, finding that the certification was too untimely and, further, that Dr. Brozyna's certification did not present any objective evidence that Jablonowska sustained the type of permanent injury necessary to vault the verbal threshold.

Because defendants conceded liability, the three-day trial conducted in this matter was limited to the issue of damages for the wrongful death and survivorship claims. The jury entered a verdict awarding $205,018 for the wrongful death claim and $350,000 for the survivorship claims. The court denied defendants' motion for a new trial and entered judgment on the verdict.

Defendants appealed and Jablonowska cross-appealed. Defendants argued that Jablonowska failed to present sufficient evidence to support the wrongful death claim; that the trial court erred when charging the jury; that the damages award was excessive; and that plaintiff's counsel's misconduct warranted a new trial. *Jablonowska, supra*, 390 *N.J.Super.* at 402, 915 *A.*2d 617. Jablonowska's cross-appeal focused on the dismissal of her *Portee* claim. *Id.* at 404, 915 *A.*2d 617. The Appellate Division rejected all of defendants' claims. *Id.* at 402–04, 915 *A.*2d 617. As for Jablonowska's cross-appeal, the panel concluded that the verbal threshold's requirements applied to her *Portee* claim. *Id.* at 404, 915 *A.*2d 617. It "discern[ed] no valid distinction between a direct claim for emotional injury and a claim under *Portee* for

emotional distress." *Id.* at 405, 915 *A.*2d 617. Therefore, the panel affirmed the dismissal of plaintiff's claim because "[e]motional distress alone is not sufficient to carry [Jablonowska] across the threshold," *id.* at 407, 915 *A.*2d 617, and Jablonowska otherwise failed to demonstrate the "objective clinical evidence" of permanent injury required to maintain a cause of action governed by the verbal threshold. *Id.* at 408, 915 *A.*2d 617.

We granted Jablonowska's petition for certification seeking review of the Appellate Division judgment that held that her *Portee* claim was subject to AICRA's verbal threshold, and that dismissed her claim for failure to comply with the threshold's requirements.[5]  192 *N.J.* 69, 926 *A.*2d 854 (2007).

## II.

■  The parties' arguments on the fundamental issue in this matter stand in stark opposition to one another.

Jablonowska contends that a fair reading of the plain language of AICRA's verbal threshold provision does not encompass *Portee* claims in its sweep. She argues that because such claims existed prior to AICRA's reform of the verbal threshold and, therefore, were known to the Legislature at the time of that reform, the omission of any language that addresses *Portee* claims should render such derivative tort claims independent from the verbal threshold's application.

Defendants respond that the verbal threshold bars all psychological claims for emotional distress except those where the plaintiff can demonstrate some bodily injury, the nature and severity of which satisfies the threshold's requirements. According to defendants, AICRA must exempt expressly a *Portee* claim in order for such a claim to be advanced by someone who, like Jablonowska, selected the limitation-on-lawsuit option when insuring her own

---

[5] Defendants' cross-petition for certification was denied.  192 *N.J.* 69, 926 *A.*2d 854 (2007).

vehicle. Defendants argue that Jablonowska's decision to elect the verbal threshold and obtain the benefits associated with that election preclude her from filing suit against another driver for any injuries arising from a motor vehicle accident, including a *Portee* claim, when her injuries do not satisfy the threshold's bodily injury requirement.[6] In sum, defendants maintain that AICRA's verbal threshold requirements apply and that Jablonowska failed to produce the objective evidence of permanent injury required to vault the threshold.

In light of the parties' arguments, we begin our analysis with an examination of the *Portee*-based cause of action for negligent infliction of emotional distress on which Jablonowska bases her claim for recovery.

## III.

The tort of negligent infliction of emotional distress developed in this state in much the same manner as it developed elsewhere. *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 54, at 361–62 (W. Page Keeton ed., 5th ed.1984) (discussing development of tort claim for mental injury absent physical impact in various states); David W. Robertson, et al., *Cases and Materials on Torts* 235 (3d ed.2004) (recognizing that development of tort liability for emotional injuries in most states follows "a typical pattern"). Foreseeability was initially, and has remained, the touchstone for liability for negligently causing emotional injury to another. As the common law in this state has widened the net of circumstances in which emotional injury is deemed a foreseeable consequence of negligent conduct, the breadth of that liability has evolved.

---

[6] Defendants posit that a plaintiff theoretically could meet the verbal threshold's permanent bodily injury requirement through a permanent psychological injury on which a negligent-infliction-of-emotional-distress claim was based, however, such a plaintiff would have to demonstrate some objective medical evidence to support the claim of permanent psychological injury. They maintain, however, that Jablonowska failed to satisfy that requirement.

In its earliest stages, a plaintiff could recover for emotional anguish arising from a defendant's negligent conduct only when some physical impact on the plaintiff accompanied the emotional harm. *See Ward v. W. Jersey & Seashore R.R. Co.*, 65 *N.J.L.* 383, 384, 47 *A.* 561 (Sup.Ct.1900) (holding that plaintiff could not recover where "mere fright" is either unaccompanied by physical impact, or physical impact is experienced after occurrence of fright that caused emotional anguish); *see also Tuttle v. Atl. City R.R. Co.*, 66 *N.J.L.* 327, 331, 49 *A.* 450 (E. & A.1901); *Lambertson v. Consol. Traction Co.*, 60 *N.J.L.* 457, 458, 38 *A.* 684 (E. & A. 1897). Underlying the insistence on a physical-impact require-ment was a syllogistic logic. Individuals are responsible only for the "natural and proximate results of [their] negligent act[s]," and "[p]hysical suffering is not the probable or natural consequences of fright," so a plaintiff cannot recover for an injury caused by fright alone. *Ward, supra*, 65 *N.J.L.* at 385, 47 *A.* 561 (emphasis omitted). From a policy standpoint, courts also feared a "flood of litigation[ ] in cases where the injury complained of may be easily feigned without detection, and where the damages must rest upon mere conjecture and speculation." *Id.* at 386, 47 *A.* 561; *see also Restatement (Second) of Torts §* 436A comment b (1965) (discuss-ing skepticism of claims for emotional disturbance absent physical injury).

Although the physical-impact requirement remained part of this state's emotional distress common law well into the twentieth century, *see, e.g., Greenberg v. Stanley*, 51 *N.J.Super.* 90, 105, 143 *A.*2d 588 (App.Div.1958) ("New Jersey does not allow a cause of action for mental anguish where there has been no physical impact upon the plaintiff, even where his fear is for his own safety."), *aff'd in part, rev'd in part*, 30 *N.J.* 485, 153 *A.*2d 833 (1959), the requirement proved to be more of an inconvenient formality than a significant threshold for recovery. *See Portee, supra*, 84 *N.J.* at 94 n. 4, 417 *A.*2d 521 (characterizing physical-impact requirement as "mere formality"). For example, in *Porter v. Delaware, Lacka-wanna & Western Railroad Co.*, 73 *N.J.L.* 405, 63 *A.* 860 (Sup.Ct. 1906), the physical-impact requirement was deemed satisfied de-

spite the absence of any significant physical injury to the plaintiff because the plaintiff claimed that a piece of debris from a railway bridge that collapsed grazed her neck and that dust entered her eyes. *Id.* at 406, 63 *A.* 860.

In 1965, the physical-impact requirement was jettisoned explicitly. In *Falzone v. Busch,* 45 *N.J.* 559, 569, 214 *A.*2d 12 (1965), this Court held that a plaintiff could recover for emotional injury, even if unaccompanied by physical impact, provided that the defendant's negligent conduct placed the plaintiff in "a reasonable fear of immediate personal injury." *Ibid.* The Court qualified the breadth of that extension of liability for emotional injury, however, by noting that "where fright does not cause substantial bodily injury or sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability." *Ibid.* (emphasis omitted). Thus, after *Falzone,* courts considered emotional distress that accrued to any plaintiff who was within the "zone of risk" created by the negligent conduct to be a foreseeable damage arising from the negligent conduct, so long as substantial bodily injury or sickness also resulted from the fright. *See, e.g., Caputzal v. Lindsay Co.,* 48 *N.J.* 69, 76, 222 *A.*2d 513 (1966).

The final evolution of the tort of negligent infliction of emotional distress in New Jersey occurred in *Portee.* In limited circumstances, a plaintiff's emotional injury is considered a foreseeable result of a defendant's negligent conduct even when that emotional injury does not arise necessarily from presence within the zone of physical danger created by the defendant's conduct. *See Portee, supra,* 84 *N.J.* at 97–98, 101, 417 *A.*2d 521. A plaintiff now can maintain an independent cause of action for negligent infliction of emotional distress where (1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress. *Id.* at 97, 101, 417 *A.*2d 521 (relying significantly on

*Dillon v. Legg*, 68 *Cal.*2d 728, 69 *Cal.Rptr.* 72, 441 *P.*2d 912, 920 (1968)). Extending liability to capture plaintiffs that need not have been located within the zone of physical danger created by the defendant's negligent conduct when sustaining the emotional injury, the *Portee* Court stated that "[t]he emotional harm following the perception of the death or serious injury to a loved one is just as foreseeable as the injury itself, for few persons travel through life alone." *Ibid.* The four-element test for negligent infliction of emotional distress announced in *Portee* has since become a mainstay of New Jersey tort law. *See, e.g., Dunphy v. Gregor*, 136 *N.J.* 99, 102–03, 642 *A.*2d 372 (1994); *Giardina v. Bennett*, 111 *N.J.* 412, 418–19, 545 *A.*2d 139 (1988); *Mansour v. Leviton Mfg. Co.*, 382 *N.J.Super.* 594, 603–04, 890 *A.*2d 336 (App.Div.2006); *Greene v. Mem'l Hosp. of Burlington County*, 299 *N.J.Super.* 372, 381–85, 691 *A.*2d 369 (App.Div.), *remanded on other grounds*, 151 *N.J.* 67, 697 *A.*2d 542 (1997).

Generally, then, an individual can maintain an independent tort action for negligent infliction of emotional distress in two instances. A plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness. *See Falzone, supra*, 45 *N.J.* at 569, 214 *A.*2d 12. Alternatively, a plaintiff can state a prima facie claim for negligent infliction of emotional distress by satisfying the four elements set forth in *Portee*. We turn now to whether AICRA's verbal threshold applies to plaintiff's *Portee* claim when the factual underpinnings to that claim involve a motor vehicle accident.

## IV.

### A.

The limitation on lawsuit option in AICRA provides, in pertinent part,

Every owner, registrant, operator or occupant of an automobile to which [PIP coverage or medical expense coverage] regardless of fault, applies, ... is hereby

exempted from tort liability for noneconomic loss to a person who is subject to this subsection and who is either a person who is required to maintain [PIP] coverage ... medical expense benefits ... or is a person who has a right to receive benefits under [*N.J.S.A.* 39:6A–4 or –3.1], as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State unless that person has sustained a bodily injury which results in death; dismemberment, significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.
[*N.J.S.A.* 39:6A–8(a) (1998) (amended 2003).]

In construing that language to answer the question before us, we are guided by well-established principles of interpretation. First, we look to the language employed by the Legislature to understand the intended effect of this provision, *see State v. Crawley,* 187 *N.J.* 440, 452, 901 *A.*2d 924, *cert. denied,* —— *U.S.* ——, 127 *S.Ct.* 740, 166 *L.Ed.*2d 563 (2006), assuming that the Legislature meant to "ascribe to the statutory words their ordinary meaning and significance." *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). If the statute's ordinary language evidences the Legislature's clearly expressed intent, then our duty is to apply that plain meaning, for courts ought not "rewrite a plainly-written enactment of the Legislature[, or] presume that the Legislature intended something other than that expressed by way of the plain language." *Ibid.* (internal quotation marks omitted). However, if the plain language of the statute is ambiguous in respect of how the Legislature intended the statute to apply in particular circumstances, then we look to the statute's legislative history for evidence of the Legislature's intended meaning. *Id.* at 492–93, 874 *A.*2d 1039; *see also Liberty Mut. Ins. Co. v. Land,* 186 *N.J.* 163, 171, 892 *A.*2d 1240 (2006) (" 'When a statute is silent or ambiguous ... the Court must interpret the statute in light of the Legislature's intent.' " (quoting *Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001) (alteration in original))).

## B.

Applying those basic principles of construction to AICRA's verbal threshold, we consider first the plain language. The provi-

sion's wording exempts a tortfeasor from "tort liability for noneconomic loss to a person who is subject to this subsection," unless the threshold's bodily injury requirements are met. *N.J.S.A.* 39:6A–8(a) (1998) (amended 2003). Although defendants contend that that language clearly makes the threshold applicable to Jablonowska's *Portee* claim, the statute's wording is susceptible of other applications, rendering it far less clear than defendants posit.

The proscription against suit operates as a barrier to recovery that a threshold selector, who also happens to be "that person" who suffered a bodily injury from the use of an automobile, must overcome to maintain a cause of action. *Ibid.* In this case, the only person who suffered the type of direct, permanent bodily injury from the automobile accident sufficient to vault the threshold was Jablonowska's mother. *See ibid.* (stating that bodily injury that results in death satisfies threshold's permanent bodily injury requirement). However, no party in this action has suggested that Baczewska had to satisfy the verbal threshold. Nonetheless, the appellate panel below reasoned that because Jablonowska's mother suffered physical injuries leading to death as a result of the motor vehicle accident, Jablonowska's *Portee* claim must perforce also be subject to the threshold. *Jablonowska, supra,* 390 *N.J.Super.* at 404–05, 915 *A.*2d 617. According to that reasoning, because Jablonowska, as a motor vehicle operator, had chosen to subject herself to the verbal threshold, then any and every tort claim arising directly or derivatively from this motor vehicle accident must be subject to the threshold's requirements. *See ibid.* We find that reasoning overbroad and unpersuasive.

█ It is far from clear from the face of the verbal-threshold statute that the Legislature intended to subject *Portee* claims, as a class, to the threshold's bodily injury requirement. In analyzing the verbal threshold's intended applicability in these circumstances, it is compelling that the requirements for stating a prima facie *Portee* claim are specially tailored to address the particular form of emotional harm that it seeks to redress. Unlike emotional

distress tied to the possibility of personal harm to the plaintiff, a *Portee* claim is not dependent on the aggrieved person's presence within the zone of danger created by the defendant's negligent conduct. *Compare Portee, supra,* 84 *N.J.* at 97–98, 101, 417 *A.*2d 521 (requiring only that plaintiff have sensory, contemporaneous perception of serious injury to spouse or intimate family member), *with Falzone, supra,* 45 *N.J.* at 569, 214 *A.*2d 12 (insisting on plaintiff's presence within zone of danger created by defendant's negligent conduct).

As noted earlier, a plaintiff can maintain a negligent-infliction-of-emotional-distress cause of action where: (1) the plaintiff suffers "substantial bodily injury or sickness" arising from the plaintiff's location within the "zone of risk" created by the defendant's negligent conduct as recognized in *Falzone*; or (2) the plaintiff has a sensory, contemporaneous perception of a severe injury to a spouse or close family member caused by the defendant's negligent conduct that results in the plaintiff suffering severe emotional distress as recognized in *Portee*. Under certain factual circumstances, a plaintiff can seek in the alternative to recover for negligent infliction of emotional distress under both a *Falzone*-based liability theory and a *Portee*-based liability theory. *See, e.g., Dunphy, supra,* 136 *N.J.* at 102, 115, 642 *A.*2d 372 (recognizing viability of *Portee* claim where wife was only five feet from spouse when she witnessed vehicle strike spouse and cause fatal injuries even though wife also was in zone of danger created by defendant's negligent conduct). Nevertheless, the central distinction between the two liability theories is that the location of the plaintiff vis-à-vis the danger created by the defendant's negligent conduct does not impact the potential for recovery under *Portee*'s liability theory. The viability of *Portee* claims depends only on whether the plaintiff has had a sensory, contemporaneous perception of an injury that was sustained by a spouse or close family member, irrespective of the distance from which that perception arises.

We are acutely aware of the unique, derivative nature of the *Portee* claim as we approach the statutory interpretation question before us.[7] *See Wolfe v. State Farm Ins. Co.*, 224 *N.J.Super.* 348, 351–54, 540 *A.*2d 871 (App.Div.) (differentiating *per quod* claims arising out of "grief from losing a loved one," which are subsumed in action under Wrongful Death Act, from independent, derivative *Portee* claims, which are based on "the trauma of seeing a loved one suffer or die," and holding that insurance policy language that limited recovery for wrongful death operated to limit plaintiffs' *per quod* claim), *certif. denied,* 111 *N.J.* 654, 546 *A.*2d 562 (1988); *see also DeFelice v. Beall,* 274 *N.J.Super.* 592, 599, 644 *A.*2d 1136 (App.Div.) ("[T]he [Wrongful Death Act] does not recognize damage claims for emotional suffering caused by the death of another *where the claimant did not actually witness the death.*" (emphasis added)), *certif. denied,* 138 *N.J.* 268, 649 *A.*2d 1288 (1994). That same awareness of the unique components and analysis underlying *Portee* claims must be imputed to the Legislature as its language is scrutinized for any signaled intent to sweep *Portee* claims under AICRA's verbal threshold. *See Yanow v. Seven Oaks Park, Inc.,* 11 *N.J.* 341, 350, 94 *A.*2d 482 (1953) ("A legislative body in this State is presumed to be familiar not only with the statutory law of the State, but also with the common law."); *see also DiProspero, supra,* 183 *N.J.* at 494–95, 874 *A.*2d 1039 ("[T]he Legislature

---

[7] Because a plaintiff's location within the zone of danger created by a defendant's negligent conduct is of no import to a *Portee* claim, the happenstance of Jablonowska's presence in the motor vehicle at the time of her mother's injuries and death logically should have no substantive effect on whether she can state an emotional distress claim grounded in the liability theory announced in *Portee*. Jablonowska need only demonstrate that she had the necessary sensory, contemporaneous perception of the emotionally distressing event to maintain a *Portee* claim. Thus, her claim is no less legally cognizable than had she been outside the vehicle (and, indeed, outside the zone of risk created by Suther's negligence), but nonetheless in plain sight of the accident that resulted in Baczewska's fatal injuries. In other words, Jablonowska's claimed emotional distress was not caused from the fright of being within the zone of danger created by Suther's negligent operation of his motor vehicle—Jablonowska's vehicle and the area immediately surrounding her vehicle. Rather, her emotional-distress claim is based exclusively from having witnessed her mother's injuries and death.

knows how to incorporate into a new statute a standard articulated in a prior opinion of this Court.").

Despite having imputed knowledge of *Portee* for approximately eighteen years, the Legislature provided no indication that AICRA's verbal threshold was meant to superimpose the permanent bodily injury requirement on *Portee* claims that happen to involve the use of a motor vehicle. New Jersey statutes are replete with examples where the Legislature has signaled its intent to incorporate into a statute specific provisions for unique common law standards applicable to a recognized cause of action.[8] In *DiProspero*, this Court noted that that very principle was followed in respect of the verbal threshold itself when the Legislature enacted AICRA, for the Legislature "adopted [the] interpretation of the 1988 threshold requiring a plaintiff to prove a verbal threshold injury by objective credible evidence [recognized in *Oswin v. Shaw*, 129 *N.J.* 290, 319, 609 *A.*2d 415 (1992)]." *Id.* at 495, 874 *A.*2d 1039. "The Legislature's *explicit* incorporation of one of *Oswin*'s holdings ... into AICRA strongly implies that it consciously chose not to incorporate [all] of *Oswin*'s holdings." *Ibid.* (emphasis added).

As aptly noted by amicus New Jersey State Bar Association in this matter, if the Legislature intended to subject *Portee* claims to the verbal threshold, it could have included a relevant category of injuries for such claims among the types of injuries for which a

---

[8] *See, e.g., In re Guardianship of K.H.O.*, 161 *N.J.* 337, 343, 736 *A.*2d 1246 (1999) (noting that Legislature codified "best interests of the child" standard from Court's holding in *New Jersey Division of Youth & Family Services v. A.W.*, 103 *N.J.* 591, 512 *A.*2d 438 (1986) into *N.J.S.A.* 30:4C–15.1(a)); *Civalier ex rel. Civalier v. Estate of Trancucci*, 138 *N.J.* 52, 60, 648 *A.*2d 705 (1994) (noting that Legislature codified holding in *Hoy v. Capelli*, 48 *N.J.* 81, 222 *A.*2d 649 (1966) when adopting *N.J.S.A.* 59:4–5, and codified holding in *Bergen v. Koppenal*, 52 *N.J.* 478, 246 *A.*2d 442 (1968) when adopting *N.J.S.A.* 59:4–4); *Debell v. Bd. of Trs., Pub. Employees' Ret. Sys.*, 357 *N.J.Super.* 461, 463, 815 *A.*2d 997 (App.Div. 2003) (observing that Court's eleven-factor test for determining forfeiture of public pension in *Uricoli v. Board of Trustees, Police & Firemen's Retirement System*, 91 *N.J.* 62, 449 *A.*2d 1267 (1982) was incorporated by Legislature in *N.J.S.A.* 43:1–3).

threshold selector can file suit under the statute. *Cf. N.J.S.A.* 39:6A–8(a) (1998) (amended 2003) (setting forth types of injury that vault threshold). Rather, by not including any relevant reference to the derivative and unique type of emotional injury compensated for by the liability theory announced in *Portee,* the Legislature's language creates ambiguity as to whether such claims ever were intended to be dovetailed into an unfamiliar and superfluous bodily injury assessment for verbal threshold purposes.

### C.

A *Portee* claim under our common law has always transcended the need to prove permanent physical injury because it focuses on a unique type of heartsickness. It allows compensation for the severe emotional distress resulting from perceiving the death of, or severe injury to, a spouse or close familial relation. Absent some express legislative indication to the contrary, it is illogical to presume that the Legislature impliedly meant to subject *Portee* claims to the verbal threshold's permanent-injury requirement that the tort itself foregoes. Indeed, to accept the lower court's reasoning that the verbal threshold applies to Jablonowska's tort claim would result in the prohibition of any *Portee* claim arising out of the use of a motor vehicle, absent proof that the plaintiff sustained some permanent, physical bodily injury when such injury is not a necessary proof element at common law. We find no more than an arguable abstract ambiguity that the Legislature ever intended to make AICRA's revised verbal threshold applicable to *Portee* claims when such claims had not been subjected to the threshold before. Accordingly, we hold that *Portee* claims are independent of the verbal threshold's requirements.[9]

---

[9] Our dissenting colleagues assert that *Portee* claims are indistinguishable from all other psychological claims, and chide the Court for affording *Portee* claims an "exalted status." *Post* at 113, 948 *A.2d* 623. We could not disagree more with the dissent's equating of a *Portee* claim with all other claims for emotional injury.

Here, Jablonowska's mother suffered injuries arising directly out of the use of Suther's vehicle, and Jablonowska's emotional distress from witnessing her mother's injuries and death is derivative of the tort suffered by her mother. Merely because Suther's negligent operation of a vehicle is the root cause of Baczewska's fatal physical injuries provides no convincing basis for finding that Jablonowska's separate and derivative cause of action for the pain and suffering of witnessing her mother's excruciating last moments should be made subject to the verbal threshold's limitations on suit. Jablonowska's emotional distress was not caused from the fright of being located within the zone of danger created by Suther's negligent use of his motor vehicle. Rather, her emotional distress was caused entirely from her presence at the tragic scene of her mother's injuries and death. Based on those circumstances, we conclude that plaintiff's *Portee* claim is not subject to the

---

Such claims are different, as this Court recognized when establishing the cause of action. Our holding imputing similar knowledge about this special derivative claim to the Legislature is unremarkable. In the past, this Court has had no difficulty recognizing a viable *Portee* claim where the injury to a loved one arose out of an automobile accident. *See Dunphy, supra,* 136 *N.J.* at 102, 115, 642 *A.2d* 372 (permitting plaintiff to bring *Portee* action without pausing over whether plaintiff did or did not elect then-extant verbal threshold where injury to spouse arose out of automobile accident); *cf. DeFelice, supra,* 274 *N.J.Super.* at 598–99, 644 *A.2d* 1136; *Wolfe, supra,* 224 *N.J.Super.* at 351–54, 540 *A.2d* 871. Thus, the verbal threshold in place prior to AICRA did not act to bar *Portee* claims, and we perceive no indication in AICRA suddenly to erect such a barrier.

Our difficulty with the dissent is that it has subtly altered the question before the Court and thereby claims to draw support from inconsequential cases. *See post* at 116–18, 948 *A.2d* 625–26 (citing *Collins v. Union County Jail,* 150 *N.J.* 407, 421–23, 696 *A.2d* 625 (1997) and *Saunderlin v. E.I. DuPont Co.,* 102 *N.J.* 402, 405, 410, 508 *A.2d* 1095 (1986)). We have not been asked to determine whether any accident victim who suffers permanent psychological injury can vault *N.J.S.A.* 39:6A–8(a)'s permanent bodily injury requirement. The dissent would have this Court broadly expand the category of threshold selectors who might be able to pursue a psychological-injury claim against a motor vehicle operator. Today, we limit ourselves to addressing whether a *Portee* claim exists outside the constraints imposed by AICRA's verbal threshold, which is the more narrow question before us.

verbal threshold and her claim should not have been dismissed for failure to comply with its requirements.

In sum, we hold that plaintiff's negligent-infliction-of-emotional-distress claim, fashioned on the liability theory set out in *Portee*, is independent of the requirements imposed by AICRA's verbal threshold and that the claim was improperly dismissed.

## V.

For the reasons stated herein, the judgment of the Appellate Division is reversed. Plaintiff's negligent infliction of emotional distress claim is reinstated and this matter is remanded to the Law Division for further proceedings.

Justice ALBIN, dissenting.

When Halina Jablonowska purchased her automobile insurance policy, she opted for the limitation on lawsuit threshold under the Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–1.1 to –35. Because of that choice, Ms. Jablonowska cannot recover *noneconomic* damages[1] resulting from the automobile accident unless she can show that she suffered "a bodily injury which result[ed] in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." *N.J.S.A.* 39:6A–8(a).

Ms. Jablonowska claims that she suffered a permanent psychological injury—post-traumatic stress disorder—as a result of witnessing the death of her mother in a car crash, permitting her to vault the lawsuit threshold and recover for pain and suffering. I would hold that a permanent psychological injury, proven by objective credible evidence, is the equivalent of a permanent

---

[1] "Noneconomic loss" is defined as "pain, suffering and inconvenience." *N.J.S.A.* 39:6A–2(i).

bodily injury under AICRA, and give Ms. Jablonowska the opportunity to prove that she suffered a permanent injury. Our case law supports and defendant concedes that a permanent psychological injury is indeed a permanent bodily injury that can satisfy AICRA's limitation on lawsuit threshold.[2]

On the other hand, I disagree with the majority that a common law claim for negligent infliction of emotional distress under *Portee v. Jaffee*, 84 *N.J.* 88, 417 *A.*2d 521 (1980), arising from a motor vehicle accident and resulting in a nonpermanent psychological injury, is exempt from AICRA's lawsuit threshold. With regard to automobile accidents subject to AICRA, the majority gives a *Portee* claim an exalted status, distinguishing it from all other claims alleging physical and psychological injury. I see no difference under AICRA between a nonpermanent psychological injury alleged in a *Portee* claim and a nonpermanent physical and psychological injury alleged in any other common law claim. Like a nonpermanent physical injury (other than a displaced fracture), a nonpermanent psychological injury does not vault the threshold.[3] Because I believe that the majority's resolution is inconsistent with the clear language of AICRA and will generate anomalous and even absurd distinctions that were never contemplated by the Legislature, I respectfully dissent.

## I.

I disagree with the majority's assertion that a *Portee*, nonpermanent psychological injury arising from a motor vehicle accident falls outside of the lawsuit threshold. Ms. Jablonowska witnessed her mother die after their car was struck by another vehicle. Because her psychological injuries are directly related to that

---

[2] Defendant, of course, does not concede that plaintiff in this case suffered a permanent psychological injury.

[3] A displaced fracture that does not result in a permanent injury will satisfy the threshold. *N.J.S.A.* 39:6A–8(a). The displaced fracture category, however, would never apply to a psychological injury.

accident, AICRA governs this case—it is that simple. *See* *N.J.S.A.* 39:6A–8(a) (holding that limitation on lawsuit provision applies to injuries "arising out of the ownership, operation, maintenance or use of [an] automobile").

The only threshold category that possibly applies in this case is the one that allows for a recovery for pain and suffering damages when a person injured in an automobile accident sustains "a bodily injury which results in . . . a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." *N.J.S.A.* 39:6A–8(a). For purposes of AICRA, a permanent injury is "when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." *Ibid.* Because the statute does not permit a recovery of noneconomic damages for a nonpermanent physical injury, I do not see how a recovery for a nonpermanent psychological injury, even if denominated a *Portee* injury, can be treated any differently.

Moreover, AICRA's plain language makes clear that one cannot vault the verbal threshold on the basis of another person's injury. *N.J.S.A.* 39:6A–8(a) provides that a tortfeasor is not liable "for noneconomic loss to a *person* . . . unless *that person* has sustained a bodily injury which results in death . . . or a permanent injury." (Emphasis added). Thus, Ms. Jablonowska only vaults the threshold if she suffered a permanent injury herself; she does not vault the threshold because of her mother's death.

In *DiProspero v. Penn,* 183 *N.J.* 477, 874 *A.*2d 1039 (2005), we held that "generally, the best indicator of [the Legislature's] intent is the statutory language," and that it is not our role to " 'rewrite a plainly-written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language.' " *Id.* at 492, 874 *A.*2d 1039 (alteration in original) (quoting *O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002)). In short, we cannot add to or detract from the clear meaning of the statute. As part of AICRA's overall goal of containing the spiraling cost of automobile insurance, the Legisla-

ture precisely identified the kinds of injuries that would vault the threshold. *Id.* at 488, 493, 795 *A.2d* 857.

Nothing in AICRA suggests that a driver bound by the lawsuit threshold, who is involved in an automobile accident and witnesses a close family member suffer death or serious bodily injury, can recover damages for pain and suffering resulting from a nonpermanent injury, whether physical or psychological. AICRA has no carve-out for nonpermanent *Portee* injuries. Under the majority's paradigm, a driver whose car is broadsided and who observes a close relative suffer serious bodily injury can recover for pain and suffering resulting from a nonpermanent post-traumatic stress disorder. However, if a sixteen wheeler crashes into a car, which explodes in flames, and the sole occupant suffers nonpermanent physical injuries and nonpermanent post-traumatic stress disorder, no recovery for pain and suffering is allowed. That absurd result does not follow from AICRA's plain language, and could not have been intended or envisioned by the drafters of that statute. The Legislature did not make a psychological injury asserted in a *Portee* claim superior to a psychological injury asserted in any other common law claim when the injury occurs in a motor vehicle accident.

Accordingly, no distinction should be made between psychological injuries suffered by the sole occupant of a car involved in a crash and by an occupant who witnesses a close relative injured in a crash. However, as indicated earlier, a permanent psychological injury sustained in an automobile accident as a result of another's negligence is a sufficient ground for vaulting the lawsuit threshold. On that point, plaintiff, defendant, and amicus Association of Trial Lawyers of America–New Jersey all agree.

II.

AICRA's lawsuit threshold, *N.J.S.A.* 39:6A–8(a), does not define "bodily injury" as excluding injuries to the mind or the brain. Nor does it define "permanent injury" as barring a permanent mental injury for the purpose of satisfying the threshold. Signifi-

cantly, this Court has construed similar "bodily injury" language in the Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 to 59:12–3, to encompass permanent psychological injuries.

In *Collins v. Union County Jail,* 150 *N.J.* 407, 696 *A.*2d 625 (1997), we held that the verbal threshold provision of the TCA, *N.J.S.A.* 59:9–2(d), did not bar a recovery for pain and suffering in the form of a permanent post-traumatic stress disorder resulting from a corrections officer's rape of a prison inmate. *Collins, supra,* 150 *N.J.* at 421–23, 696 *A.*2d 625. Moreover, we adopted that holding even though the inmate did not sustain residual physical injury. *Id.* at 422, 696 *A.*2d 625.

The TCA threshold provides that in a suit against a public entity or public employee, a plaintiff shall not be awarded pain and suffering damages "resulting from any injury" except "in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00." *N.J.S.A.* 59:9–2(d). In *Collins, supra,* the plaintiff's treating psychologist testified that the plaintiff suffered from post-traumatic stress disorder and that it was highly likely that that psychological injury was permanent. 150 *N.J.* at 415, 696 *A.*2d 625. We concluded that permanent psychological harm resulting from the rape "constitute[d] a 'permanent loss of a bodily function' within the meaning of *N.J.S.A.* 59:9–2(d)." *Id.* at 420, 696 *A.*2d 625. In reaching that conclusion, we noted that other jurisdictions have recognized post-traumatic stress disorder as a "physical injur[y]." *Id.* at 421, 696 *A.*2d 625. With a present-day understanding of psychological injuries, we observed that the "mind . . . is as much a part of the body as the back, a leg, a hand, or a finger." *Id.* at 423, 696 *A.*2d 625. We were persuaded that the Legislature did not intend to treat "psychological" injuries differently from "physical injuries under the [TCA's] threshold provision when [those psychological injuries] arise in a context similar to that which precipitated plaintiff's injuries." *Ibid.*

Thus, at the time of AICRA's enactment in 1998, the Legislature knew that this Court in *Collins* had construed the term

"permanent loss of a bodily function" in the TCA's verbal threshold to include permanent psychological injuries. Similarly, the Legislature was aware that in *Saunderlin v. E.I. DuPont Co.*, 102 *N.J.* 402, 508 *A*.2d 1095 (1986), we interpreted the provision of the Workers' Compensation Act, *N.J.S.A.* 34:15–36, permitting coverage for a " '[d]isability permanent in quality and partial in character . . . which restricts the function of the body or of its members or organs,' " to encompass "claims of psychiatric disability." *Saunderlin, supra*, 102 *N.J.* at 405, 410, 508 *A*.2d 1095 (quoting *N.J.S.A.* 34:15–36). Significantly, in reaching that result, we did not accept "the argument that [the statutory] language excludes from compensation injuries that restrict the function of the mind as distinguished from the body." *Id.* at 408 n. 4, 508 *A*.2d 1095.

Despite our pronouncements in those cases, the Legislature made no effort in enacting AICRA to define "bodily injury" or "permanent injury" as excluding permanent psychological injuries. Because "the Legislature is presumed to be aware of judicial construction of its enactments," *DiProspero, supra*, 183 *N.J.* at 494, 874 *A*.2d 1039 (quotation omitted), we can conclude that the Legislature consciously omitted from AICRA's lawsuit threshold any language limiting "bodily injury" and "permanent injury" to a physical injury.

It also bears repeating that a permanent injury under AICRA's lawsuit threshold must be found by objective, credible evidence. Recently, in *Patterson v. Board of Trustees*, 194 *N.J.* 29, 942 *A*.2d 782 (2008), we found that within the medical profession, there are objective standards for determining both the existence and cause of a psychiatric illness, such as post-traumatic stress disorder. *Id.* at 49, 942 *A*.2d 782 (citing *Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR )*, "a handbook published by the American Psychiatric Association, [which] categorizes known mental disorders for the purpose of diagnosis"); *see also Saunderlin, supra*, 102 *N.J.* at 413–416, 508 *A*.2d 1095 (finding that " 'diagnostic criteria' " in *DSM–III* related to "manifestations of physical symptoms or descriptions of states of mind . . . might constitute

demonstrable objective medical evidence as the profession of psychiatry conceives it").

Here, Ms. Jablonowska's treating psychiatrist submitted a certificate of merit in which he concluded that his patient suffered a "permanent injury"—"Severe Post Traumatic Stress Disorder"—as a result of witnessing the death of her mother in the car accident. In his certification, the psychiatrist stated that his opinion was based on "objective clinical evidence," including "psychiatric evaluation and ongoing treatment."

Based on that certification, I would remand to the trial court. That Ms. Jablonowska filed the physician's certification more than 60 days after defendant filed his answer is not necessarily fatal to her claim under AICRA. *See Casinelli v. Manglapus*, 181 *N.J.* 354, 355–56, 858 *A.*2d 1113 (2004) (holding that untimely filing of physician's certification does not mandate dismissal of action); *see also N.J.S.A.* 39:6A–8(a). I would leave it to the trial judge to fix an appropriate penalty for Ms. Jablonowska's failure to file a timely physician's certification. *See Casinelli, supra,* 181 *N.J.* at 356, 858 *A.*2d 1113. Ultimately, a jury should determine whether Ms. Jablonowska suffered a permanent psychological injury related to the automobile accident.

### III.

I conclude that AICRA does not allow a recovery for pain and suffering for a nonpermanent *Portee* injury. I would remand for a new trial to allow Ms. Jablonowska the opportunity to prove that she suffered a permanent psychological injury compensable under AICRA.

Justices LONG and WALLACE join in this opinion.

*For reversal/reinstatement/remandment*—Chief Justice RABNER and Justices LaVECCHIA, RIVERA–SOTO and HOENS—4.

*For dissension*—Justices LONG, ALBIN and WALLACE—3.