793 A.2d 805 (2002)
349 N.J. Super. 374
John ABRAHAM, Appellant,
v.
TOWNSHIP OF TEANECK ETHICS BOARD, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 2002.
Decided March 25, 2002.
*806 Bernard A. Kuttner, Milburn, and John Abraham, pro se, argued the cause for appellant (Mr. Abraham, on the brief).
Martin R. Cramer, Beverly, argued the cause for respondent Township of Teaneck Ethics Board (Ruden & Cramer, attorneys; Mr. Cramer, on the brief).
David Samson, Attorney General, attorney for respondent Local Finance Board, Department of Community Affairs (Keith A. Costill, Deputy Attorney General, filed a statement in lieu of brief).
*807 Before Judges PRESSLER,[1] CIANCIA and PARRILLO.
The opinion of the court was delivered by PARRILLO, J.A.D.
This is an appeal from a final determination of the Local Finance Board of the Department of Community Affairs (Board) adopting the initial decision of the administrative law judge (ALJ), which found that appellant John Abraham, while Mayor of the Township of Teaneck, violated the Local Government Ethics Law, specifically N.J.S.A. 40A:9-22.6(4), by failing to disclose his interest in a company known as Abcon Environmental on his financial disclosure statement for 1992. The final decision of the Board also adopted the penalty of $100 assessed against appellant in the initial decision. For reasons that follow, we affirm.
Some background is in order. The Local Government Ethics Law (Act) was enacted on February 20, 1991 and became effective ninety days thereafter on May 21, 1991. L. 1991, c. 29, § 27. The Act establishes a statutory code of ethics, N.J.S.A. 40A:9-22.5, applicable to, among others, "local government officers," N.J.S.A. 40A:9-22.3(g), including elected officials, such as appellant. N.J.S.A. 40A:9-22.3(g)(1). The code of ethics generally provides that a local government officer shall not engage in any activity that places him in an actual or apparent conflict of interest regarding his public duties. N.J.S.A. 40A:9-22.5(a) to (k).
To that end, the Act requires local government officers to annually file a financial disclosure statement containing information about, among other things:
The name and address of all business organizations in which the local government officer or a member of his immediate family had an interest during the preceding calendar year.

[N.J.S.A. 40A:9-22.6(4).]
This information is to be filed on a financial disclosure form prescribed by the Board. N.J.S.A. 40A:9-22.6. The initial filings for local government officers were due on August 19, 1991 (90 days following the effective date of the Act). Subsequent filings are due on or before April 30 of each year. Ibid. The filed financial disclosure statements are deemed to be public records. Ibid.
The Act, including the code of ethics and the financial disclosure statement, is administered and enforced by the Board. N.J.S.A. 40A:9-22.4. However, a county or municipality at its option may establish a county or municipal ethics board to adopt a local ethics code and to enforce the code of ethics, subject, of course, to the approval of the Board. N.J.S.A. 40A:9-22.13; N.J.S.A. 40A:9-22.19. A local government officer aggrieved by a finding of a local ethics board may appeal the decision to the Board. N.J.S.A. 40A:9-22.18; N.J.S.A. 40A:9-22.19. Thereafter, the aggrieved person may appeal the decision of the Board to the Appellate Division. N.J.S.A. 40A:9-22.9; R. 2:2-3(a)(2).
The Township of Teaneck has established a local ethics board in accordance with N.J.S.A. 40A:9-22.19. By letter dated September 22, 1993, Teaneck resident Ronald Schwartz, an attorney, filed a complaint with the Mayor and Council, Township of Teaneck, and the Chairman of the Teaneck Ethics Board alleging certain ethical violations on the part of appellant *808 Abraham. After determining that the complaint warranted consideration of specific charges, the Teaneck Ethics Board conducted hearings spanning fourteen days, involving testimony of seven witnesses and twenty exhibits. At the conclusion, on March 16, 1994, the Teaneck Ethics Board adopted a resolution that found Abraham had committed three ethics violations stemming from his fifty percent ownership interest in Abcon Environmental Technologies, Inc. (Abcon). One of themthe subject of this appealis that Abraham failed to disclose his interest in Abcon on his financial disclosure statement for 1992 in violation of N.J.S.A. 40A:9-22.6(4).[2]
Abraham appealed to the Board and the matter was transmitted to the Office of Administrative Law (OAL) as a contested case. By agreement of the parties, in lieu of a hearing de novo, the ALJ reviewed the record compiled by the Teaneck Ethics Board and issued an initial decision on April 7, 2000, finding that Abraham violated N.J.S.A. 40A:9-22.6(4) by failing to disclose his interest in Abcon on his financial disclosure form for 1992, and dismissing the other charges. In accordance with N.J.S.A. 40A:9-22.10, the ALJ assessed the statutory minimum penalty of $100 against Abraham for the violation of N.J.S.A. 40A:9-22.6(4). The Board adopted the initial decision on May 10, 2000.
On appeal, Abraham claims that he was denied procedural due process by the local ethics board's acceptance and review of the citizen complaint against him, and that the final administrative decision finding him in violation of N.J.S.A. 40A:9-22.6(4) is not supported in the evidence. We find no merit in either contention.
Our role in reviewing administrative action is limited. Matter of Musick, 143 N.J. 206, 216, 670 A.2d 11 (1996). In the search for arbitrary or unreasonable action, the judicial role is generally restricted to three inquiries:
(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency bases its action; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Ibid. (citations omitted).]
See also In re CAFRA Permit No. 87-0959-5, 152 N.J. 287, 304, 704 A.2d 1261 (1997); Brady v. Board of Review, 152 N.J. 197, 210, 704 A.2d 547 (1997); Gloucester Cty. Welfare Bd. v. New Jersey Civ. Serv. Comm'n, 93 N.J. 384, 398, 461 A.2d 575 (1983). In undertaking this review, deference is given to the special competence and expertise of an administrative agency, such as the Local Finance Board, with regard to technical matters with which that agency is concerned. New Jersey Bell Tel. Co. v. State Dept. of Public Utils., Bd. of Public Utility Comm'rs, 162 N.J.Super. 60, 77, 392 A.2d 216 (App.Div.1978). The special expertise that the Board possesses in matters involving local government affairs has been repeatedly recognized by the courts. See Morris Cty. v. Skokowski, 86 N.J. 419, 424, 432 A.2d 31 (1981); Schinck v. Board of Ed., 60 N.J.Super. 448, 465, 159 A.2d 396 (App.Div.1960). Indeed, the Legislature recognized this by vesting the Board with the overall responsibility of interpreting and enforcing the Local Government Ethics Law. N.J.S.A. 40A:22.4; N.J.S.A. 40A:22.7.
*809 We address the claimed procedural defects first. The applicable statute, N.J.S.A. 40A:9-22.24, provides in pertinent part:
The municipal ethics board, upon receipt of a signed written complaint by any person alleging that the conduct of any local government officer or employee serving the municipality is in conflict with the municipal code of ethics or financial disclosure requirements, shall acknowledge receipt of the complaint within 30 days of receipt and initiate an investigation concerning the facts and circumstances set forth in the complaint....
Here, five months after Abraham filed his original financial disclosure statement for 1992, a so-called "concerned" citizen, on September 22, 1993, filed a signed written letter of complaint with the Teaneck Ethics Board alleging that Abraham, among other things, failed to disclose a financial interest in Abcon. Abraham received a copy of this complaint. The Teaneck Ethics Board properly treated this letter, signed and in writing, as a complaint pursuant to N.J.S.A. 40A:9-22.24 and acted in response thereto. The letter's specific allegations of ethics violations constituted fair notice of the charges to initiate a proceeding against Abraham; thereafter Abraham was afforded a full opportunity to be heard with counsel in hearings that spanned fourteen days and involved seven witnesses and twenty exhibits. He was also afforded a de novo determination in the OAL. In short, there was no violation of procedural due process. See In re Kallen, 92 N.J. 14, 24-27, 455 A.2d 460 (1983).
There was also substantial credible evidence in the record to support the Board's finding that Abraham had an interest in Abcon that he failed to report on his financial disclosure statement for 1992, in violation of N.J.S.A. 40A:9-22.6(4). Suffice it to say, the undisputed proof is that Abraham, while serving as Mayor of Teaneck, owned fifty percent of Abcon, a start-up plumbing contracting business, at least as of November 25, 1992 when, as President of Abcon, he executed stock certificates for 100 shares and signed a receipt for 50 of those shares issued to him by the company. Even earlier in time, on October 15, 1992, Abraham became a signatory on Abcon's corporate checking account the company's only asset at the time. Contrary to Abraham's assertion, stock certificates are, however, only evidence of shareholder status; their physical possession is not a prerequisite to the formation of the corporate relationship or ownership in the company. Hill v. Warner, Berman & Spitz, 197 N.J.Super. 152, 162, 484 A.2d 344 (App.Div.1984). See also Kallop v. McAllister, 678 A.2d 526, 530-31 (Del.Sup.Ct.1996). Nor does the fact that the business may not have been fully operational in 1992 in any way negate Abraham's one-half interest in Abcon. The fact remains that Abraham was authorized to, and did, write checks on Abcon's bank account during 1992. Thus, despite conclusive proof of his ownership interest in Abcon, Abraham did not disclose this fact on the financial disclosure statement for 1992 that was due, and filed, on April 30, 1993.
Abraham argues, nevertheless, that his subsequent amendment of the form remediates any disclosure deficiency. He is wrong for several reasons. In the first place, Abraham's 1992 financial disclosure statement was not amended until November 18, 1993, more than six months after its due date of April 30, 1993 and also subsequent to the Teaneck Ethics Board's ethics investigation and initiation of complaint proceedings against him in October 1993. Even then, Abraham failed to disclose that which should have been reported initially: that on November 25, 1992, Abraham *810 was issued stock certificates for fifty shares of Abcon for which he signed a receipt. Instead, in the November 18, 1993 amendment, Abraham certified: "[a]t no time was stock delivered to me or endorsed over and/or received by me." This amendment persists in violating both the spirit and letter of the Act's disclosure requirements, the purpose of which is to guide the ethical conduct of public officers who "stand in a fiduciary relationship to the people whom they have been elected or appointed to serve," Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474, 86 A.2d 201, cert. denied, 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), and to determine the existence of actual or apparent conflicts of interest regarding the public officer's public duties. N.J.S.A. 40A:9-22.5(a) to (k).
The final administrative decision of the Board is affirmed.
NOTES
[1] Judge Pressler did not participate in oral argument. However, the parties consented to her participation in the decision.
[2] The Teaneck Ethics Board dismissed certain other allegations against Abraham.