**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5070-18
              A-0153-19

VNO 1105 STATE HWY 36,
L.L.C., %STOP & SHOP,

      Plaintiff-Appellant,

v.

TOWNSHIP OF HAZLET,

      Defendant-Respondent.

_____

VNO 1105 STATE HWY 36,
L.L.C., BY STOP & SHOP,

      Plaintiff-Respondent,

v.

TOWNSHIP OF HAZLET,

      Defendant-Respondent.

_____

THEODORE J. LAMICELLA, JR.,

      Appellant.

_____

Argued (A-5070-18) and Submitted (A-0153-19)
February 24, 2020 – Decided September 20, 2021

Before Judges Ostrer, Vernoia, and Susswein.

On appeal from an interlocutory order of the Tax Court
of New Jersey, Docket Nos. 4038-2013, 8116-2014,
7353-2015, 2076-2016, and 3935-2017, whose opinion
is reported at 31 N.J. Tax 112 (Tax 2019).

David B. Wolfe argued the cause for appellant VNO
1105 State Hwy 36, L.L.C., %Stop & Shop (Skoloff &
Wolfe, PC, attorneys; David B. Wolfe, Rebecca L.
Hutcheon, and Eileen W. Toll, on the briefs).

Grace Chun argued the cause for intervenor-appellant
Theodore J. Lamicella, Jr. (Pearlman & Miranda, LLC,
attorneys; Michael J. Caccavelli, of counsel and on the
briefs; Grace Chun, on the briefs).

James H. Gorman argued the cause for respondent
Township of Hazlet.

Michelline Capistrano Foster, Deputy Attorney
General, argued the cause for amicus curiae New Jersey
Division of Taxation and Monmouth County Board of
Taxation (Gurbir S. Grewal, Attorney General,
attorney; Melissa H. Raksa, Assistant Attorney
General, of counsel; Michelline Capistrano Foster, on
the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Tax assessors are not typical municipal officials. Although municipalities

appoint them, N.J.S.A. 40A:9-146, county tax administrators direct them,

N.J.S.A. 54:3-16, county tax boards revise and correct their work, N.J.S.A. 54:4-46 to -48, and the State Division of Taxation's Director certifies, regulates, investigates, and removes them, N.J.S.A. 54:1-25, -35.25, -35.29, -36, -37. Yet, assessors are also agents of the Legislature. See Ream v. Kuhlman, 112 N.J. Super. 175, 190 (App. Div. 1970). They implement the Legislature's power of taxation, see Daniels v. Borough of Point Pleasant, 23 N.J. 357, 360 (1957), by determining "the full and fair value" of property in their taxing district, N.J.S.A. 54:4-23. In doing so, they also perform "quasi-judicial functions" by applying "independent judgment." Ream, 112 N.J. Super. at 190.

The question presented in this appeal is whether, because of their special place in the governmental firmament, tax assessors are categorically prohibited from offering expert opinions for taxpayers outside their municipality. We hold they are not. While such disqualification may be good policy, statutory law and regulations at present do not require it. We deem it prudent to leave it to others with policy-making authority to decide whether there ought to be a per se rule that precludes tax assessors from serving as expert witnesses on behalf of private interests. By contrast, case-specific conflicts may warrant disqualification. But those are not present here. Therefore, we reverse the Tax Court's order barring

3

Theodore J. Lamicella, Jr., the Wall Township tax assessor, from testifying for a Hazlet Township property owner in its tax appeal in Tax Court.

I.

VNO 1105 State Hwy 36, L.L.C., by Stop & Shop (VNO) owns property in Hazlet. Formally known as block 65, lot 4, the property includes a vacant and, per VNO, dilapidated and outdated, retail building. It once housed a Bradlees discount department store. Each year from 2013 to 2017, VNO filed direct appeals to the Tax Court, challenging Hazlet's assessments of the property, which ranged from $4,420,000 (2013) to $4,660,100 (2017).

To support its contention that Hazlet over-valued the property, VNO retained Lamicella as its expert witness. Lamicella is a State Certified General Real Estate Appraiser and a Certified Tax Assessor. In 2016, Lamicella began working as a deputy tax assessor for Wall, and the following year, he filled a vacancy for the township's assessor position. His four-year term under N.J.S.A. 40A:9-148 started July 1, 2018.

Notwithstanding his appointment, Lamicella remained Director of Appraisal and Litigation Services for Associated Appraisal Group, a private firm. He held that position since 2010. Lamicella's employment agreement with Wall expressly allowed Lamicella's employment with Associated Appraisal

Group, but it barred him from performing private work in the township through the firm and conditioned any "outside private employment" on the township administrator's approval.

Shortly before the scheduled trial of VNO's tax appeals, Hazlet moved to bar Lamicella's appraisal report and his testimony.[1]  Hazlet contended that a municipal tax assessor was categorically barred from advancing in the Tax Court a taxpayer's opposition to another assessor's work.  Hazlet contended that, because of the role tax assessors play, Lamicella owed a duty of loyalty to tax assessors generally, which precluded him from taking a taxpayer's side of any Tax Court matter.  Hazlet did not identify any specific confidences of Hazlet or Wall that Lamicella breached, although it did fault Lamicella for including in his report a comparable land sale in Wall from 2012.

VNO opposed the motion, contending that no statute or regulation directly barred Lamicella's participation, and Hazlet had not presented any case-specific evidence of a conflict of interest.  VNO contended that Lamicella acquired the information about the 2012 comparable land sale in Wall several years before

---

[1]  The full report is not included in the record.  However, in his deposition, Lamicella opined that the old retail building was obsolete and not suitable for renovation, and the property's highest and best use involved redeveloping it after demolishing the existing building.

A-5070-18

he became assessor. VNO also contended that barring Lamicella violated his First Amendment rights to free speech.

In granting the motion, the Tax Court reasoned in a published decision, VNO 1105 State Hwy 36, L.L.C. v. Township of Hazlet, 31 N.J. Tax 112, 118 (Tax 2019), that to maintain the public's trust, an assessor may appear only on the government's behalf in Tax Court proceedings. The court noted that an assessor is "delegated with a quasi-legislative duty of assessing real property in a fair manner," and must meet a "high level of ethics and professionalism." Ibid. According to the court, an assessor-as-private-expert could be viewed "as having some advantage due to an access or ability to obtain taxpayer or property information not readily available to other real estate appraisers," and that the perception "would impugn the integrity of any assessment and the significance of any assessor's role as a quasi-legislative agent of the State." Id. at 130. The court also expressed concern that the public might assume that assessors favored clients of attorneys for whom the assessor provided testimony. Id. at 131.

The court held, "The [Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.1 to -22.25,] together with Taxation's guidelines sufficiently support the proposition that an assessor should not be casting doubt as to the validity or correctness of an assessment by appearing for a property owner or

6

taxpayer . . . ." Id. at 122. The court specifically cited: N.J.A.C. 18:12A-1.9(l), limiting assessors' appearances before county boards of taxation; and general conflict-of-interest prohibitions in the Handbook for New Jersey Assessors, §§ 105.02, 106.02 (rev. 2021) (hereinafter Handbook). Id. at 119-20.

The court also relied on LGEL provisions that bar a local government officer (which includes an assessor, N.J.A.C. 5:35-2.1(a)(33)) from: maintaining business interests "in substantial conflict with the proper discharge of . . . duties in the public interest," N.J.S.A. 40A:9-22.5(a); "us[ing] [one's] official position to secure unwarranted privileges or advantages for [oneself] or others," N.J.S.A. 40A:9-22.5(c); "undertak[ing] any employment or service . . . which might reasonably be expected to prejudice [one's] independence of judgment in the exercise of . . . official duties," N.J.S.A. 40A:9-22.5(e); and "us[ing] . . . [one's] public office or employment, or any information, not generally available to . . . the public" obtained through the office or employment "for the purpose of securing financial gain" for the officer or the officer's family or business, N.J.S.A. 40A:9-22.5(g). Id. at 120-21, 125-26.

The court also found support for Lamicella's disqualification in the ethics code of the Association of Municipal Assessors of New Jersey, a voluntary

7

membership organization, stating that "[i]t shall be improper for an assessing officer to represent a taxpayer in any manner, in any jurisdiction, concerning the determination of assessments." Id. at 123-24 (citation omitted). Additionally, the court relied on a 1979 informal Attorney General Opinion stating that it was likely improper for a sitting "assessor to hold 'a position with a real estate appraisal firm,'" as the assessor would be privy to confidential information he could use to benefit clients. Id. at 124 (citation omitted).

The court rejected the suggestion that it lacked "authority to 'regulate' assessors," and instead held that it was empowered to "control the type and nature of testimony to be proffered" and who may offer it, "since it can proceed in any manner compatible with [Rule] 1:1-2(a)." Id. at 133.

The court also rejected VNO's contention that disqualifying Lamicella would violate his First Amendment rights, holding that "public office casts certain responsibilities and restrictions." Ibid. (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

VNO filed a timely motion to reconsider. And one day before the return date, Lamicella filed a motion to intervene in the Tax Court case. Finding no flaw in its reasoning, the court denied the reconsideration motion. And, roughly a month later, the court denied Lamicella's intervention motion. Citing Rule

8

4:33-1, the court held that Lamicella was not entitled to intervene as of right because he lacked an interest in "the property or transaction which is the subject of the action"; VNO adequately protected his interest; and his motion was untimely. Citing Rule 4:33-2, the court denied permissive intervention, noting again that VNO vigorously argued against Lamicella's disqualification, the court had already rendered its decision, and Lamicella's expressed desire to create a record for appellate review did not justify permitting him to intervene.

By leave granted, VNO appeals from the disqualification order. We also permitted Lamicella to intervene in VNO's appeal, and we permitted the State to participate as amicus curiae on behalf of the Division of Taxation and the Monmouth County Board of Taxation. We subsequently granted Lamicella's motion for leave to appeal from the order denying his motion to intervene before the Tax Court. For purposes of our opinion, we consolidate Lamicella's individual appeal from the order denying his motion to intervene with VNO's appeal from the disqualification order.

## II.

No tax law or regulation expressly bars an assessor in one municipality from testifying in Tax Court for a private taxpayer from another town. And the LGEL does not categorically prohibit such testimony. Absent case-specific

9

evidence that Lamicella violated a confidence or breached a duty, the Tax Court exceeded its authority in barring him from testifying.

A.

The Tax Court misplaced reliance on the Division of Taxation's regulation and other administrative materials. To interpret a regulation, we use the same canons of construction that apply to statutes, Essex Cnty. Welfare Bd. v. Klein, 149 N.J. Super. 241, 247 (App. Div. 1977), and look first to the regulation's plain language, Cruz-Diaz v. Hendricks, 409 N.J. Super. 268, 275-76 (App. Div. 2009) (quoting Jablonowska v. Suther, 195 N.J. 91, 105 (2008)). If that is clear, our task is done. Cf. In re Kollman, 210 N.J. 557, 568 (2012) (discussing statutory construction).

Although the Division's regulation, N.J.A.C. 18:12A-1.9(l), clearly limits assessors' appearances before county boards of taxation, it says nothing about appearances before the Tax Court. It states, "No assessor shall appear before the [county tax] board as an expert witness against another assessor or taxing district within the State except to defend the assessment of his or her taxing district." Ibid.

True, the Division adopted the regulation in 1974, 6 N.J.R. 205(b) (May 9, 1974), long before the Tax Court's creation, L. 1993, c. 74, § 1 (codified at

N.J.S.A. 2B:13-1), so the Division could not have contemplated the issue presented here when it promulgated the rule. And the Division may well have "premised" the rule "on ethical and professional concerns," <u>VNO</u>, 31 N.J. Tax at 119, which could apply equally to Tax Court appearances. But the Division has chosen not to extend the regulation's reach; and we may not do so in the agency's place.

We may not substitute the "spirit of the regulation" for its plain language; yet, the "spirit of the regulation" guided the 1979 advice from a deputy attorney general (DAG) to a county board of taxation that an assessor's work for a private appraisal firm "would appear to violate the ethical principles underlying N.J.A.C. 18:12A-1.9(l)." <u>See</u> Letter from Harry Haushalter, Deputy Att'y Gen., to G. David Hulse, Assistant Sec'y, Ocean Cnty. Bd. of Tax'n, at 3 (Oct. 4, 1979).[2] The DAG also assumed that the privately employed assessor could

---

[2] Although the Tax Court referred to this letter as an "Attorney General Opinion," it is not a formal opinion and evidently is not published. <u>See</u> <u>Bd. of Educ. of W. Windsor-Plainsboro Reg'l Sch. Dist. v. Bd. of Educ. of Delran</u>, 361 N.J. Super. 488, 493 n.2 (App. Div. 2003) (distinguishing between formal, informal, and memorandum opinions of the Attorney General and stating "[o]nly a 'formal opinion' has precedential value"); Div. of Law & Pub. Safety, <u>Opinions of the Attorney General of New Jersey</u>, at v-vii (1949 & 1950) (describing approval process for formal opinions); <u>see also</u> <u>Serv. Armament Co. v. Hyland</u>, 70 N.J. 550, 563 (1976) (suggesting that a formal opinion of the Attorney General is entitled to greater weight than other expressions of the Attorney

inappropriately exploit confidential information that other assessors shared with him or her. Id. at 2. However, the record here is devoid of evidence that Hazlet's assessor shared any confidences with Lamicella that he could misuse while working for VNO. In any event, the DAG cautioned that "no formal determination" could be made in the abstract. Id. at 3.

Nor does the Handbook or the ethics code of the Association of Municipal Assessors compel Lamicella's disqualification. The Association is a non-governmental entity. Its code may persuade policymakers. But it does not bind Lamicella or the court.

The Handbook's general prohibition of conflicts begs the question whether Lamicella was conflicted. The Handbook § 105.02 states:

> [A]n assessor must recognize the need to perform competently, diligently, and in conformity with the professional ethics that reasonably accompany his professional status. In observing professional ethics, the assessor must have in mind not only the avoidance of activities which will obviously and presently involve a conflict with his ethical official duties, but also the probability or possibility that such a situation will develop . . . .

General's view of the law). And although formal opinions may command our respect, see Quarto v. Adams, 395 N.J. Super. 502, 513 (App. Div. 2007); State v. Son, 179 N.J. Super. 549, 553-54 (App. Div. 1981), even those do not bind us, Pruent-Stevens v. Toms River Twp., 458 N.J. Super. 501, 513 (App. Div. 2019).

12

[(Second alteration in original).]

And the Handbook § 106.01 simply reiterates the restriction on appearances before county tax boards and then adds generally, "Assessors should avoid work activities outside their position as assessor from which a strong presumption of conflict of interest could be drawn."

Furthermore, the Handbook is not compelling authority on ethical precepts governing assessors. We may defer to the Handbook if it reflects how the Division interprets its own regulations, see Essex Cnty. Bd. of Tax'n v. Twp. of Caldwell, 21 N.J. Tax 188, 197 (App. Div. 2003), but its own regulations do not address an assessor's appearance in Tax Court. In any event, the Handbook does not bind us, Calton Homes, Inc. v. W. Windsor Twp., 15 N.J. Tax 231, 259 (Tax 1995), nor does it command our deference when it addresses issues within another agency's expertise and authority. Rather, we owe deference to "to the interpretation of the agency charged with applying and enforcing a statutory scheme." Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301 (2015).

And the Legislature has "vest[ed] the [Local Finance] Board with the overall responsibility of interpreting and enforcing the Local Government Ethics Law." Abraham v. Twp. of Teaneck Ethics Bd., 349 N.J. Super. 374, 379 (App. Div. 2002) (first citing N.J.S.A. 40A:9-22.4; and then citing N.J.S.A. 40A:9-

22.7).  Absent a more specific statute or regulation — and there is none — the Local Finance Board is the agency to which we owe deference on the local government ethics issue before us.  Ibid. (stating "deference is given to the special competence and expertise of . . . the Local Finance Board," and recognizing the Local Finance Board's "special expertise . . . in matters involving local government affairs").

Notably, the Division has acknowledged that the LGEL protects the public from tax assessors' conflicts of interest.  26 N.J.R. 1110(a) (Feb. 22, 1994); 25 N.J.R. 4591(a) (Oct. 4, 1993).  In 1993, the Division "delete[d] assessors from conflict of interest provisions [N.J.A.C. 18:12-4.5 and N.J.A.C. 18:12A-1.18] that prohibit[ed] a person from having an interest in a revaluation firm engaging in revaluation work within a county where that person is employed as an assessor."  25 N.J.R. 4591(a).  In defending the proposed change, the Division noted that a tax assessor often had "multiple employment"; specifically, one could serve as a tax assessor "in more than one taxing district in the same county," and "a tax assessor may also appear as an expert property appraisal witness in a county in which he or she serves as an assessor."[3]  Ibid.

---

[3]  On its face, this sentence seems to acknowledge the precise practice at issue here.  But the Division may have intended to refer only to assessors who appear as expert witnesses on the municipality's side of cases.

However, the Division concluded that the LGEL adequately addressed the risk of conflicts, stating, "In either situation, the public is protected from a conflict of interest under the Local Government Ethics Law." Ibid. In adopting the amendment, the Division reiterated that the LGEL governed assessors as local government employees, and, citing N.J.S.A. 40A:9-22.5(a), (c), (d) and (e), the Division stated that the law "prohibited [assessors] from engaging in certain activities which conflict with the proper discharge of their duties in the public interest." 26 N.J.R. 1110(a).

Therefore, we next consider the LGEL and the Local Finance Board's view of how it affects a tax assessor's freedom to work for a taxpayer.

B.

The LGEL governs conflicts of interest of local government officials, and the Local Finance Board implements the LGEL. See Wyzykowski v. Rizas, 132 N.J. 509, 529 (1993) (stating the LGEL "refined the definition of conflict of interest"); N.J.S.A. 40A:9-22.4 (stating "[t]he Local Finance Board . . . shall have jurisdiction to govern and guide the conduct of local government officers or employees regarding violations of the provisions of [the LGEL] who are not otherwise regulated by a county or municipal code of ethics"). Although courts look to both the common law and the LGEL to determine if a conflict exists,

Shapiro v. Mertz, 368 N.J. Super. 46, 52 (App. Div. 2004), "decisions should be consistent with the principles of [the LGEL]," Wyzykowski, 132 N.J. at 530.[4] And, "[d]etermining whether a conflict exists requires a case-by-case, fact-sensitive analysis." Randolph v. City of Brigantine Plan. Bd., 405 N.J. Super. 215, 224 (App. Div. 2009).

The LGEL is intended "to provide a method of assuring that standards of ethical conduct . . . for local government officers and employees shall be clear, consistent, uniform in their application, and enforceable on a Statewide basis." N.J.S.A. 40A:9-22.2(e); see also Grabowsky v. Twp. of Montclair, 221 N.J. 536, 552 (2015) (same). The LGEL is also intended "to provide local officers or employees with advice and information concerning possible conflicts of interest which might arise" while performing their duties. N.J.S.A. 40A:9-22.2(e); see also Mondsini v. Loc. Fin. Bd., 458 N.J. Super. 290, 299 (App. Div. 2019) (discussing the Local Finance Board's jurisdiction).

---

[4] Because Hazlet does not contend that Lamicella's work as an expert witness creates a conflict under the common law, we need not address the question. But see Wyzykowski, 132 N.J. at 523 (stating that "[a]t common law, '[a] public official is disqualified from participating in judicial or quasi[-]judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body'" (second alteration in original) (quoting Scotch Plains-Fanwood Bd. of Educ. v. Syvertsen, 251 N.J. Super. 566, 568 (App. Div. 1991))).

The Local Finance Board promotes these legislative goals when it issues advisory opinions interpreting the LGEL.  If not governed by a county or municipal ethics code, a government official may secure "from the Local Finance Board an advisory opinion as to whether any proposed activity or conduct would in its opinion constitute a violation of the provisions of [the LGEL]."  N.J.S.A. 40A:9-22.8; see also N.J.S.A. 40A:9-22.7(e) (stating the Local Finance Board is empowered "[t]o render advisory opinions as to whether a given set of facts and circumstances would constitute a violation of [the LGEL]").  Opinions are published when two-thirds of the Local Finance Board's members approve.  N.J.S.A. 40A:9-22.8.

Confronted with a scenario closely comparable to the one here, the Local Finance Board stated in a published advisory opinion that the LGEL does not categorically prohibit a tax assessor from performing work for a taxpayer who contests an assessment.  Local Finance Board, Loc. Gov't Ethics L. Advisory Op. No. LFB-95-010, at 1-2 (Aug. 19, 1996) (hereinafter Advisory Op. 95-010), https://www.nj.gov/dca/divisions/dlgs/programs/ethics_docs/all%20public%20 advisory%20opinions.pdf.  The opinion-requestor, who was a tax assessor and county taxation board member, wanted to serve as a non-testimonial expert on the taxpayer's side.  Id. at 1.  The assessor, who was also a certified residential

real estate appraiser and a certified lead/inspector risk assessor, asked if he or she "may prepare an appraisal to be used by another appraiser in an appearance and testimony before a County Board of Taxation and/or the Tax Court." Ibid. The assessor's proposed appraisals would focus on how lead contamination affected property value. Ibid. In an apparent reference to N.J.A.C. 18:12A-1.9(l), the assessor acknowledged "that a sitting tax assessor is not permitted to testify against another tax assessor at the County Tax Board level and would not prepare any appraisals involving communities in [redacted] County";[5] but the assessor "advise[d] that the law is silent with regard to testifying in Tax Court and to preparing reports for same where [the assessor] may not testify before the Tax Board or Tax Court." Ibid.

Without addressing restrictions found outside the LGEL, "[t]he [Local Finance] Board . . . determined that generally a tax assessor would not be in violation of the Local Government Ethics Law by preparing appraisals for other appraisal firms, as long as the work is outside of the municipality [the assessor] serve[s] and is unrelated to matters in the municipality." Id. at 1-2. We discern

_____

[5] The LGEL directs that public advisory opinions "not disclose the name of the local government officer . . . unless the board . . . so determines." N.J.S.A. 40A:9-22.8; see also N.J.A.C. 5:35-1.5(e). We presume the Local Finance Board redacted the assessor's county and city, as well as the assessor's name, to maintain the requester's anonymity.

no reason for the opinion to differ if an assessor proposes to be a testimonial expert, as Lamicella does here. Either way, an assessor takes a taxpayer's side against another assessor in Tax Court proceedings. The Local Finance Board concluded the LGEL does not categorically prohibit an assessor from doing so.

The Local Finance Board highlighted that an assessor may still violate the law in a specific case. The Local Finance Board cautioned the assessor that the LGEL bars "employment or service . . . which might reasonably be expected to prejudice [one's] independence of judgment in the exercise of [one's] official duties," id. at 2 (quoting N.J.S.A. 40A:9-22.5(e)), and bars using one's "public office or employment, or any information, not generally available to the members of the public" acquired through one's public office or employment, to "secur[e] financial gain for [one]self" or one's family or business, ibid. (quoting N.J.S.A. 40A:9-22.5(g)). Specifically, the Local Finance Board warned that there would be a "potential violation" if the assessor used "information . . . not generally available to the public" that the assessor received as assessor, or if the assessor's "preparation of appraisals might reasonably be expected to prejudice [his or her] independence of judgment" as assessor. Ibid.

Notably, the Local Finance Board did not deem it necessary even to discuss N.J.S.A. 40A:9-22.5(a) and (c) — provisions the Tax Court invoked here

in addition to subsections (e) and (g). Subsection (a) bars maintaining business interests "in substantial conflict with the proper discharge of . . . duties in the public interest." And subsection (c) bars "us[ing] [one's] official position to secure unwarranted privileges or advantages for [one]self or others." By its plain terms, the provision bars an actual conflict, not a perceived one. And we have held that "the mere public perception of impropriety does not violate subsection (c); a violation requires proof that the public official intended to use his or her office for a specific purpose." Mondsini, 458 N.J. Super. at 305. Furthermore, the privilege or advantage must be "unwarranted," in other words, "unjustified or unauthorized, one that would permit the municipal official to obtain something otherwise not available to the public at large." Id. at 306 (quoting In re Zisa, 385 N.J. Super. 188, 196 (App. Div. 2006)). But "[w]e do not think . . . being an employee in and of itself is dispositive of whether the privilege or advantage is 'unwarranted.'" Ibid.

Although the Local Finance Board stated that the advisory opinion only applied to the question presented because of the "fact sensitive nature of each circumstance," Advisory Op. 95-010, at 2, the opinion nonetheless undermines the Tax Court's view here that the LGEL categorically barred Lamicella's work

for VNO in Hazlet. The Local Finance Board opined that a tax assessor does not automatically violate the LGEL by working for a taxpayer.

The Supreme Court has made it clear that an agency's advisory opinion is entitled to our deference, unless it is "plainly unreasonable," In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010) (quoting Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 485 (2008)), because the "agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise," id. at 262, 269 (affirming an agency's interpretation of a statute and regulations as set forth in the agency's advisory opinion). There is nothing plainly unreasonable about Advisory Op. 95-010. Therefore, we defer to its reasoning.

In doing so, we acknowledge, as did the Local Finance Board, that an assessor working for a taxpayer may, under a given set of facts, run afoul of the LGEL. However, this case is remarkable for its lack of case-specific facts. Hazlet has presented no competent evidence that Lamicella has on VNO's behalf exploited non-public information that he received — from Wall or Hazlet — as Wall's assessor. See N.J.S.A. 40A:9-22.5(g). Although Hazlet complains that Lamicella used a land sale in Wall as a comparable in his report, Hazlet presents

no evidence that Lamicella used non-public information, and Lamicella asserted he learned everything he knew about the 2012 sale long before he became assessor in 2017.[6]  The record also does not demonstrate that Lamicella, who was an appraiser for years before he became assessor, has acted with the specific purpose to exploit his position as assessor "to secure unwarranted privileges or advantages."  See N.J.S.A. 40A:9-22.5(c).[7]  Nor has Hazlet demonstrated that Lamicella's appraisal business "is in substantial conflict with" his duties as assessor.  See N.J.S.A. 40A:9-22.5(a).

---

[6]  The Tax Court expressed concern about an assessor-as-private-expert's access to taxpayer responses to "Chapter 91 requests" "not readily available to other real estate appraisers."  VNO, 31 N.J. Tax at 130; see also Prime Acct. Dep't v. Twp. of Carney's Point, 212 N.J. 493, 504 (2013) (describing "Chapter 91" information requests under N.J.S.A. 54:4-34 for a taxpayer's income information); 510 Ryerson Rd., Inc. v. Borough of Lincoln Park, 28 N.J. Tax 184, 189 (Tax 2014) (discussing the appropriateness of a protective order to protect confidentiality of Chapter 91 information).  However, it is unclear how Lamicella's access to such information for Wall taxpayers would affect his testimony about VNO's property in Hazlet.  There is no evidence he utilized such information in his report in this case.

[7]  Hazlet contends, with less than absolute certainty, that Lamicella "might well have violated" subsection (c) by "using his assessor position to bolster his credentials to attract private clients."  But Hazlet refers to no case or Local Finance Board advisory opinion that states that a municipal official who is otherwise permitted to conduct private sector work secures "an unwarranted . . . advantage[]," N.J.S.A. 40A:9-22.5(c), when he or she informs potential clients of his or her public sector experience.

One might argue that if an assessor performs a significant amount of private appraisal work for a particular attorney's clients, that "might reasonably be expected to prejudice his independence of judgment," N.J.S.A. 40A:9-22.5(e), at least when it comes to handling matters in the assessor's own municipality involving the same attorney. But there is no evidence of that, or any other reason to doubt Lamicella's assessments in Wall, because he helped challenge one in Hazlet.

In sum, we conclude the Tax Court erred in finding that the LGEL, specifically N.J.S.A. 40A:9-22.5(a), (c), (e), and (g), barred Lamicella from serving as an appraiser for VNO.[8] But that does not complete our analysis.

## C.

A trial court has the "inherent authority" to disqualify an expert witness "to prevent unfair prejudice" to a particular party, In re Pelvic Mesh/Gynecare Litig., 426 N.J. Super. 167, 192 (App. Div. 2012), and "to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and

---

[8] Because we do not find that Lamicella violated the LGEL, we need not reach the question whether a court would be empowered to prevent a violation by, as the court did here, barring the government official from taking on certain private sector work. See N.J.S.A. 40A:9-22.10(c) (stating that the remedies provided for violating the LGEL "are in addition to all other . . . civil remedies provided under the law").

A-5070-18

promote public confidence in the legal system," id. at 197 (Sabatino, J., concurring) (quoting Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004)).  But see Overlook Terrace Corp. v. Excel Props. Corp., 210 N.J. Super. 420, 426 (App. Div. 1986) (analyzing a motion to disqualify an expert on conflict-of-interest grounds under Evid. R. 4, now N.J.R.E. 403); Conforti & Eisele, Inc. v. Div. of Bldg. & Constr., 170 N.J. Super. 64, 72-73 (Law Div. 1979) (relying on attorney-client privilege to bar testimony of the plaintiff's expert who previously worked for the state agency's counsel in prior, related litigation).  We must decide whether the Tax Court's order may be grounded in the inherent authority.  We conclude it may not.

Resort to a court's inherent expert-excluding authority "is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely."  In re Pelvic Mesh, 426 N.J. Super. at 198 (Sabatino, J., concurring) (quoting Hewlett-Packard, 330 F. Supp. 2d at 1092).  The authority is more limited than the authority to disqualify attorneys.  Ibid.  Some explain that this is so because "[e]xperts are not advocates in the litigation but sources of information and opinions."  Id. at 199 (quoting Eng. Feedlot, Inc. v. Norden Laboratories, Inc., 833 F. Supp. 1498, 1501 (D. Colo. 1993)).  But because, realistically, experts, even if not advocates, are still biased or perceived to be, toward their clients,

24

see Christopher Tarver Robertson, Blind Expertise, 85 N.Y.U. L. Rev. 174, 179, 184-89 (2010) (discussing "the litigant-induced selection, compensation, and affiliation biases" of experts), we believe there are more persuasive reasons to restrict a court's inherent expert-excluding authority. First, a party enjoys a "presumptive right to designate one or more expert witnesses." In re Pelvic Mesh, 426 N.J. Super. at 196 (Sabatino, J., concurring). Second, the exclusion of any relevant testimony undermines the search for the truth. Cf. State v. Terry, 218 N.J. 224, 239 (2014) (noting that privileges are narrowly construed on that basis). Third, the court should tread cautiously when relying on "inherent power," mindful that the Supreme Court alone may establish rules of practice. See Liberty Title & Tr. Co. v. Plews, 6 N.J. 28, 43 (1950) (stating the Supreme Court's rule-making power is exclusive).

Other courts have not hesitated to disqualify an expert who is retained by, and receives confidential information from, one party, and then switches sides to work for the opposing party in the same case. See, e.g., Koch Refin. Co. v. Jennifer L. Boudreaux MV, 85 F.3d 1178, 1181 (5th Cir. 1996). And in cases that do not involve such clear side-switching, some federal and state courts still look for evidence that the expert violated a confidential relationship. They consider if the movant reasonably believed it had a confidential relationship with

the expert in the past and if the movant actually confided in the expert; and they consider "the public interest in allowing or not allowing an expert to testify." Ibid.; see also Hewlett-Packard, 330 F. Supp. 2d at 1092-93; Cordy v. Sherwin-Williams Co., 156 F.R.D. 575, 580 (D.N.J. 1994); Mitchell v. Wilmore, 981 P.2d 172, 175 (Colo. 1999); W. Va. ex rel. Billups v. Clawges, 620 S.E.2d 162, 167 n.6 (W. Va. 2005) (collecting cases). The public has an interest in preventing conflicts and violations of confidences, "ensuring access to expert witnesses who possess specialized knowledge," and discouraging gamesmanship that prevents parties from retaining experts. Cordy, 156 F.R.D. at 580; see also Hewlett-Packard, 330 F. Supp. 2d at 1095 (discussing the impact on "the integrity of the adversary process and . . . public confidence in the legal system" "if experts are permitted to breach confidentiality agreements" and sell their services to the highest bidder).

But there is no evidence of side-switching here. And Hazlet presents no objectively reasonable basis to believe it had a confidential relationship with Lamicella or that it confided in him. It is not enough for Hazlet to contend simply that Lamicella is a tax assessor. Nor are we convinced that the public interest clearly compelled Lamicella's disqualification, where there is no evidence of a breach of confidences and disqualification would deny VNO the

26

witness of its choice.  In sum, there was no basis to invoke inherent authority to disqualify Lamicella.

D.

Because we conclude the Tax Court erred in disqualifying Lamicella, we need not address the argument that his disqualification violated his First Amendment rights.  See Donadio v. Cunningham, 58 N.J. 309, 325-26 (1971) (stating "a court should not reach and determine a constitutional issue unless absolutely imperative in the disposition of the litigation").

III.

Lamicella's appeal from the trial court's order denying his motion to intervene lacks sufficient merit to warrant extended discussion.  See R. 2:11-3(e)(1)(E).  We confine ourselves to the following comments.

Lamicella did not satisfy his burden to demonstrate grounds for intervention as of right.  See Am. Civ. Liberties Union of N.J., Inc. v. Cnty. of Hudson, 352 N.J. Super. 44, 67 (App. Div. 2002) (allocating burden).  Under Rule 4:33-1, Lamicella was required to (1) make a "timely application"; (2) "claim[] an interest relating to the property or transaction which is the subject of the action"; (3) be "so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest"; and (4)

show his interest was not "adequately represented by existing parties." He failed on all counts.

He filed his motion after the court decided the disqualification motion and on the eve of its decision on VNO's reconsideration motion. Although Lamicella is deeply interested in his disqualification, the "property or transaction which is the subject of the action" is the tax assessment of 1105 Route 36; he has no interest in that. While the court's order may have impaired his interest in testifying in this case, it is not binding on other Tax Court judges. See State v. Martes, 266 N.J. Super. 117, 120 (Law Div. 1993). Lastly, VNO has adequately represented his interests, as its interest in his testimony is as strong as his interest in giving it. See Builders League of S. Jersey, Inc. v. Gloucester Cnty. Utils. Auth., 386 N.J. Super. 462, 469 (App. Div. 2006).

Lamicella's claim to permissive intervention fares no better. We review the trial court's order for an abuse of discretion, City of Asbury Park v. Asbury Park Towers, 388 N.J. Super. 1, 12 (App. Div. 2006), and find none. A party may intervene permissively "[u]pon timely application . . . if the claim or defense and the main action have a question of law or fact in common." R. 4:33-2. The court may consider if "the intervention will unduly delay or prejudice

the adjudication of the rights of the original parties." Ibid. Here, it suffices that Lamicella asked to join the fray after the matter was decided.

## IV.

In A-5070-18, the court's order disqualifying Lamicella is reversed. In A-0153-19, the court's order denying Lamicella's motion to intervene is affirmed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION