**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2462-22

CHARLES CUCCIA,

    Petitioner-Appellant,

v.

LOCAL FINANCE BOARD,

    Respondent-Respondent.

_____

Submitted October 2, 2024 – Decided October 15, 2024

Before Judges Mayer and Puglisi.

On appeal from the New Jersey Department of Community Affairs, Local Finance Board.

Dorsey & Semrau, LLC, attorneys for appellant (Fred C. Semrau, of counsel; Edward R. Pasternak, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Steven M. Gleeson, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Charles Cuccia appeals from a March 29, 2023 final agency decision issued by respondent Local Finance Board (Board), adopting the initial decision of an Administrative Law Judge (ALJ), finding Cuccia violated the Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.1 to -22.25. Specifically, the ALJ and Board found Cuccia violated N.J.S.A. 40A:9-22.5(a), (c), (d), (e), (g), and (h), and assessed a $200 fine for each violation for a total penalty of $1,200. We affirm.

The Board found Cuccia violated the foregoing subsections of the LGEL by simultaneously holding the positions of Chief Financial Officer (CFO) for the Borough of Lodi (Borough) and owner of Treasury Services, a financial consulting business. While Cuccia served as the Borough's CFO, the Borough contracted with Treasury Services to update and improve its financial audit system and for other financial services.

The Board issued a November 7, 2018 notice of violation, alleging Cuccia violated the LGEL. Upon receiving the violation notice, Cuccia requested a hearing before the Office of Administrative Law. The matter was assigned to an ALJ for a hearing as a contested case. Prior to the hearing date, the Board filed a motion for summary decision under N.J.A.C. 1:1-12.5, which Cuccia opposed.

We presume the parties are familiar with the facts set forth in the ALJ's comprehensive December 13, 2022 initial decision. We provide a summary to give context to our opinion.

Cuccia owned and operated Treasury Services, a company providing financial services to local governments. Cuccia's wife worked for Treasury Services. In 2012, Cuccia, on behalf of Treasury Services, entered into contracts with the Borough to support the Borough's Finance Department, including implementing an upgraded uniform system for the management of the Borough's accounts and accounting procedures. None of the contracts between Treasury Services and the Borough were publicly bid. Cuccia claimed the contracts were excluded from the public bid requirement because they were for professional services.

The Borough also contracted with Treasury Services to "outsource the municipal finance office operations" when the full-time CFO retired. Cuccia became the Borough's part-time CFO in October 2012. The Borough renewed Cuccia's contract for the CFO position every year from 2012 to 2018. During his tenure as the Borough's CFO, Cuccia continued to contract with the Borough

on behalf of Treasury Services.[1]   Additionally, while Cuccia served as the Borough's CFO, Treasury Services employed Cuccia's wife.

In his written decision, the ALJ granted the Board's motion for summary decision.  He determined the parties had no genuine disputes with respect to the following facts:  "Cuccia served simultaneously as CFO of Lodi, while also serving as Finance Officer for Treasury Services, a company contracted to provide financial services for Lodi" and "while serving as CFO, Cuccia continued to acquire contracts from Lodi, without a competitive procurement process, using information not generally available to the public."

The ALJ first addressed Cuccia's violations of 40A:9-22.5(a), (d), (e), and (h) to determine whether there was a disqualifying conflict of interest between Cuccia simultaneously serving as the Borough's CFO and owner of Treasury Services when the Borough contracted with Treasury Services.  The ALJ noted these subsections of the LGEL did not require intent to determine if an official had a disqualifying conflict of interest.  Relying on Grabowsky v. Twp. of Montclair, 221 N.J. 536, 554 (2015), the ALJ stated that once a disqualifying interest is found, "an inquiry into an official's motive is unnecessary."

---

[1]  The ALJ found the value of the contracts between the Borough and Treasury Services after Cuccia became the Borough's CFO totaled $601,958.32.

The ALJ specifically found Cuccia had:

> [A] multitude of impermissible interests . . . [,] including direct pecuniary interest, an indirect pecuniary interest, and possibly even a direct personal interest. A direct pecuniary interest [arose] due to Cuccia's ownership of Treasury Services, and an indirect pecuniary interest [arose] due to Cuccia's wife's ownership of the same company. A direct personal interest also [arose] due to Treasury Service's employment of [the Borough Manager]'s daughter during all relevant times herein that Cuccia was both CFO of Lodi and owner and operator of Treasury Services.

The ALJ determined "[i]t [was] undisputed that Cuccia was involved in contract proposals with Treasury Services, as he submitted the same to the Borough for approval between 2012 and 2018. This conduct alone is enough to determine that Cuccia was representing Treasury Services in matters brought before Lodi officials." Thus, the ALJ granted summary decision in favor of the Board as to subsections (a), (d), (e), and (h).

The ALJ then considered Cuccia's violation of N.J.S.A. 40A:9-22.5(c) and (g), noting those subsections "deal[t] with intentional acts by officials to seek 'unwarranted privileges or advantages' or 'financial gain.'" The ALJ found it "undisputed" that Cuccia used information not available to the public to acquire contracts from Lodi while serving as its CFO. The ALJ further found Cuccia, while serving as the Borough's CFO and owner of Treasury Services, "proposed

contracts for financial services to the Borough" and "did not seek bids, quotes[,] or any form of competition before accepting these contracts." The ALJ also found Cuccia benefitted from information he obtained in his capacity as the Borough's CFO to secure contracts between the Borough and Treasury Services. He concluded Cuccia's conduct presented a perceived conflict between Cuccia's private interests as the owner of Treasury Services and his public duties as the Borough's CFO. Thus, the ALJ granted summary decision to the Board under subsections (c) and (g).

In considering the appropriate penalty, the ALJ imposed the sum of $200 for each of Cuccia's violations of the LGEL. Because the ALJ found Cuccia violated six different provisions of the LGEL, he assessed a total penalty of $1,200.

On appeal, Cuccia argues the Board's decision is unsupported by sufficient credible evidence in the record. Cuccia asserts the facts, as determined by the ALJ, did not support a finding that he violated the six specific subsections of the LGEL. We disagree.

We begin with our standard of review. The ALJ's consideration of a motion for summary decision under N.J.A.C. 1:1-12.5 is "substantially the same" as a trial court's consideration of a motion for summary judgment under

6

Rule 4:46-2. Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995).

However, our review of an agency's summary decision differs from our de novo review of a court's grant of summary judgment. See Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 330 (2010). While we review de novo an agency's determination that there were no genuine issues of material fact, we "strive to 'give substantial deference to the interpretation [the] agency gives to a statute that the agency is charged with enforcing.'" In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 423 (2008) (citing Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 15 (2005)). Generally, we will affirm an agency's quasi-judicial decision unless it is "arbitrary, capricious, or unreasonable." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). We are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

When reviewing agency actions, we defer "to the special competence and expertise of an administrative agency, such as the Local Finance Board, with regard to technical matters with which that agency is concerned." Abraham v. Twp. of Teaneck Ethics Bd., 349 N.J. Super. 374, 379 (App. Div. 2002) (citing

7

N.J. Bell Tel. Co. v. N.J. Dep't of Pub. Utils., 162 N.J. Super. 60, 77 (App. Div. 1978)). We recognize "[t]he special expertise that the Board possesses in matters involving local government affairs." Ibid. (citing Morris Cnty. v. Skokowski, 86 N.J. 419, 424 (1981); Schinck v. Bd. of Educ., 60 N.J. Super. 448, 465 (App. Div. 1960)). "Indeed, the Legislature recognized this by vesting the Board with the overall responsibility of interpreting and enforcing the [LGEL]." Ibid.

The purpose of the LGEL is:

> to provide a method of assuring that standards of ethical conduct and financial disclosure requirements for local government officers and employees shall be clear, consistent, uniform in their application, and enforceable on a Statewide basis, and to provide local officers or employees with advice and information concerning possible conflicts of interest which might arise in the conduct of their public duties.
>
> [N.J.S.A. 40A:9-22.2(e).]

N.J.S.A. 40A:9-22.5 establishes a code of ethics for local government officers or employees under the jurisdiction of the local finance board. Here, Cuccia was charged with violation of subsections (a), (c), (d), (e), (g), and (h) of the statute which state:

> a. No local government officer or employee or member of his immediate family shall have an interest in a business organization or engage in any business,

transaction, or professional activity, which is in substantial conflict with the proper discharge of his duties in the public interest; . . .

c. No local government officer or employee shall use or attempt to use his official position to secure unwarranted privileges or advantages for himself or others;

d. No local government officer or employee shall act in his official capacity in any manner where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment;

 e.  No local government officer or employee shall undertake any employment or service, whether compensated or not, which might reasonably be expected to prejudice his independence of judgment in the exercise of his official duties; . . .

g. No local government officer or employee shall use, or allow to be used, his public office or employment, or any information, not generally available to the members of the public, which he receives or acquires in the course of and by reason of his office or employment, for the purpose of securing financial gain for himself, any member of his immediate family, or any business organization with which he is associated; [and]

h. No local government officer or employee or business organization in which he has an interest shall represent any person or party other than the local government in connection with any cause, proceeding, application or other matter pending before any agency in the local government in which he serves. . . .

A-2462-22

Having reviewed the record, particularly the undisputed facts identified by the ALJ and the Board, we reject Cuccia's argument that the ALJ improperly applied those facts in concluding he violated the LGEL.

Subsections (a), (d), (e), and (h) of N.J.S.A. 40A:9-22.5 do not require Cuccia have a specific intent to violate the LGEL. Nor do these subsections of the statute require an actual conflict of interest. Instead, these subsections are applicable where there is "a potential for conflict." Wyzykowski v. Rizas, 132 N.J. 509, 524 (1993).

Our Supreme Court identified four settings where an interest is disqualifying in violation of the LGEL:

> (1) "Direct pecuniary interests," when an official votes on a matter benefitting the official's own property or affording a direct financial gain;
>
> (2) "Indirect pecuniary interests," where an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member;
>
> (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but in a matter of great importance, as in the case of a councilman's mother being in the nursing home subject to the zoning issue; and

(4) "Indirect [p]ersonal [i]nterest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.

[Grabowsky, 221 N.J. at 553 (quoting Wyzykowski, 132 N.J. at 525-26).]

Cuccia does not dispute he simultaneously served as the Borough's CFO and owner of Treasury Services. Nor does Cuccia deny Treasury Services entered into contracts with the Borough to provide various financial services for the Borough between 2012 to 2018 while he was the Borough's CFO. Further, Cuccia agrees those contracts were not publicly bid.

Here, the undisputed facts demonstrated Cuccia had direct and indirect interests in the financial service contracts between Treasury Services and the Borough by virtue of his ownership of Treasury Services and simultaneous role as the Borough's CFO. Cuccia's interests as the Borough's CFO also overlapped with the financial interests of his wife as an employee of Treasury Services.

We are satisfied Cuccia's dual role as the Borough's CFO and owner of Treasury Services presented a classic conflict of interest. On the one hand, Cuccia sought to earn money for his private consulting business, Treasury Services. On the other hand, Cuccia had a duty to provide the best available financial services for the Borough that placed the least financial burden on the

11

Borough's taxpayers. These competing interests supported the ALJ's finding that Cuccia violated subsections (a), (d), (e), and (h) of N.J.S.A. 40A:9-22.5.

Unlike subsections (a), (d), (e), and (h), a government officer's violations of subsections (c) and (g) require a finding of specific intent. Intent can be proven through circumstantial evidence. See Bergen Com. Bank v. Sisler, 157 N.J. 188, 209-10 (1999). Additionally, intent can be "inferred from all that [a party] did and said, and from all the surrounding circumstances of the situation under investigation." Mayflower Indus. v. Thor Corp., 15 N.J. Super. 139, 162 (Ch. Div. 1951), aff'd, 9 N.J. 605 (1952).

Under subsection (c), a government officer may not "secure unwarranted privileges or advantages for himself or others." Cuccia "secured unwarranted privileges or advantages for himself," as well as his wife, by proposing the Borough contract with Treasury Services while he served as the Borough's CFO. Cuccia does not deny Treasury Services received a financial gain of $601,958.32 as a result of the contracts between his company and the Borough while he was the Borough's CFO.

Regarding subsection (g), a government officer may not use information, "not generally available to the members of the public, which he receives or acquires in the course of and by reason of his office or employment, for the

12

purpose of securing financial gain for himself, any member of his immediate family, or any business organization with which he is associated."

Here, as the Borough's CFO, Cuccia used information not generally available to the public for the purpose of securing financial gain in the form of financial service contracts between the Borough and Treasury Services. Cuccia used knowledge of the Borough's financial service needs he acquired through his position as the Borough's CFO to propose contractual arrangements wherein Treasury Services would supply services the Borough required.

Cuccia never inquired whether other financial service companies could address the Borough's financial needs at a lower cost. Nor did Cuccia suggest Treasury Services should not be considered for service contracts with the Borough due to Cuccia's dual position as the Borough's CFO and owner of Treasury Services. These actions or inactions evidenced Cuccia's intent to procure privileges or advantages and to secure financial gain for himself and others in violation of subsections (c) and (g) of the LGEL.

Regarding the public's perception of the conflict in Cuccia's dual roles and the potential lack of independent judgment in the exercise of his dual roles, the ALJ correctly concluded a reasonable member of the public could question whether Cuccia, as the Borough's CFO, would fail to thoroughly review the

13

financial services provided by his own company, Treasury Services, for its work on behalf of the Borough. The public could also perceive Cuccia's judgment as the Borough's CFO would be compromised by his ownership of Treasury Services. On these facts, the public could believe Cuccia's dual roles impaired his objectivity and independence of judgment in violation of the LGEL.

We reject Cuccia's argument that he did not violate the LGEL because the Borough Council made the decision to award the no-bid contracts to Treasury Services. The conflict of interest finding was not based on the awarding of the contracts. Rather, the LGEL violations were based on Cuccia's simultaneous representation of the Borough and Treasury Services at the time the contracts were awarded.

Although Cuccia challenged the finding that he violated the LGEL, on appeal he does not challenge the reasonableness of the penalty imposed. Thus, we need not address the amount of the sanction imposed.

To the extent we have not addressed any arguments raised by Cuccia, the arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2462-22